**YOUSSEF et al., Appellees and Cross–Appellants,**

v.

**PARR, INC., Appellant and Cross–Appellee.**

[Cite as *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56821.

Decided Oct. 4, 1990.

682

Thomas L. Meros, for appellees and cross-appellants.

W. Andrew Hoffman III and Gregory E. O'Brien, for appellant and cross-appellee.

---

PATTON, Chief Judge.

Defendant-appellant and cross-appellee, Parr, Inc., appeals from a jury verdict in favor of plaintiff-appellees and cross-appellants, Nasser and Sally Youssef, in this intentional tort action. The jury awarded Nasser Youssef $800,000 in compensatory damages and $1,000,000 in punitive damages and $125,000 to his wife, Sally, for her loss of consortium claims.

Nasser Youssef was an employee of the appellant Parr, Inc. ("Parr") and injured his back twice, on September 4, 1984 and June 15, 1985, respectively. Appellant stipulated to the first injury but denied that the second injury occurred. Appellant assigns nine errors for our review. Nasser and Sally Youssef cross-appeal and assign three errors for our review. The evidence adduced by plaintiffs disclosed the following:

During June 1984 Nasser took a two-week vacation to visit his sick mother in Egypt. Nasser stayed in Egypt for an additional two weeks. When Nasser returned to work, he found out the plant manager, Bill Lebus, had fired him. Nasser proceeded to present medical documentation showing that he had been under a doctor's care in Egypt and that his father-in-law had called Parr to inform them of Nasser's situation.[1] Thus, Nasser was reinstated in mid-August 1984.

Nasser testified that Lebus exhibited bad feelings towards him continuously since his reinstatement. Nasser testified that Lebus played favorites within the plant, allowing certain employees privileges not allowed to others, and assigning the less desirable jobs to disfavored employees such as himself. Lebus assigned Nasser to harder tasks than Lebus had assigned to him prior to his reinstatement.

---

1. At trial, Parr's witnesses admitted that they received a call from Nasser's father-in-law but the witnesses stated that the person who answered the phone hung up because he could not understand the caller's English. However, Nasser testified that his father-in-law spoke very good English because his father-in-law had worked in an English camp in Egypt.

On September 4, 1984, Nasser suffered a back injury while lifting boxes of materials and was off work for five weeks. On October 15, 1984, Nasser returned to work with a doctor's note stating that Nasser could only work on light duty tasks and that he should not lift more than twenty pounds. Nasser gave the note to the assistant plant manager, John Bodner, who gave the note to Lebus. Nasser was given a light duty job (*e.g.*, watch a pump and a meter) during the first two hours of his first day back at work. Thereafter, co-employee Tom Lombardo, who also was on light duty, told Nasser that if he, Lombardo, had to do a harder job he would make sure that Nasser also had to do a harder job. Lombardo then talked to Bodner, who reassigned Nasser to a job that required a lot of fast twisting and lifting. After lunch, Nasser complained to the union representatives about his reassignment which he believed had resulted from Lebus's order. The union representative told Nasser that he had to do anything that Lebus told him to do or he would get fired. Therefore, from that point on Nasser continued to do this job although it was aggravating his back.

On November 20, 1984, Nasser gave a second doctor's note to Bodner and Lebus which again stated that Nasser should only be assigned to light duty work and that he should not lift more than twenty pounds. At no time from the date Nasser returned to work until the date of his second injury did he ever give notice to Lebus, Bodner or any other Parr supervisor that he was off light duty. However, Nasser was never again assigned a light duty job. Thus, in order to complete his work, Nasser testified that he began to sneak assistance from his cousin Nabil and Dennis Hopkins in lifting and dumping heavy materials.

On June 14, 1985, Bodner ordered Nasser to dump thirteen drums weighing approximately four hundred pounds each. Nasser told Bodner that he could not do this job. Bodner replied, "Listen, this is Lebus's idea. Do it with Lebus from now on. Don't get me in trouble." Further, Bodner told Nasser that he would not get any help because Lebus wanted him to do this job alone. However, Nasser tried to sneak help but his cousin Nabil was off that day. He asked Hopkins for help but Hopkins appeared nervous and told Nasser he could not help him because he had been ordered to stay away from Nasser that day. Nasser proceeded to dump the drums alone and began to feel pain. As Nasser left work that day he informed Bodner that he had hurt his back and that he was going to the hospital.

Nasser's injury required surgery. Dr. Seltzer, Nasser's attending physician, testified that Nasser's injury was the result of nonobservance of the light duty requested by his treating doctors. Further, Seltzer stated Nasser would never be able to return to the kind of work he was performing at Parr.

Dr. Seltzer also testified that Nasser was constantly in severe pain and his family and social life had drastically changed since his second injury.

Tom Owen, the former plant manager at Parr's east side plant,[2] testified that he had two conversations with Lebus regarding Nasser. During the conversations Lebus made racial and disparaging remarks about Nasser and said that he would "get" Nasser for the Egyptian trip. Owen took Lebus's comments to mean he would fire Nasser by hurting Nasser physically. Knowing that Lebus had been fired previously at Parr because of favoritism and his treatment of employees, Owen went to the west side plant to investigate the situation. Owen learned that Nasser had been given normal, heavy and dangerous assignments when he had been under doctor's orders for light duty. Further, Owen learned that there were other men who had been on light duty assignments or no assignments at all. Thereafter, on various occasions, Owen warned his supervisors (George Mitchell, manufacturing manager, Francis DeVille, president, and Paula Osborne, personnel director) that "Lebus was out to hurt Nasser." Owen testified that Nasser was injured within a week of a meeting Owen had with Mitchell and DeVille regarding the situation. George Mitchell testified that he had fired Lebus because he did not treat all employees equally but later rehired Lebus to give him a second chance. Mitchell felt Lebus improved for a while but then went back to his old habits because employees were being assigned to jobs they could not or should not do.

The evidence adduced by appellant Parr disclosed the following:

Lebus and Bodner were aware of Nasser's light duty and twenty-pound limitation. Essentially, both men denied all allegations set forth in Nasser's and Owen's testimony. However, Lebus's credibility and Bodner's credibility were shown to be questionable. Lebus admitted he had lied during his previous deposition testimony in this case. On three occasions, Bodner had given conflicting accounts as to how and when he learned of Nasser's injury.

Lombardo testified that Lebus treated all employees equally. Hopkins admitted that he had helped Nasser with his work, but denied knowledge that such help was contrary to Lebus's orders. Grobelny denied telling Nasser that he would put a stop to Nasser's requests for help and had a general lack of memory to all testimony. However, Grobelny admitted refusing to help Nasser when Grobelny was busy. Both Osborne and DeVille claimed that Owen never told them that Lebus was endangering Nasser. DeVille testified

---

2. Owen's responsibilities also consisted of "safety and environmental" control at both Parr plants.

that in his capacity as president of Parr he had ratified Lebus's conduct at Parr.

On appeal, appellant Parr assigns eight errors.

I

■ Appellant Parr's first and second assigned errors will be discussed jointly. Appellant Parr argues that the court erred in failing to grant its motions for directed verdict and judgment notwithstanding the verdict because there was no evidence of (a) the existence of a dangerous condition or that (b) injury to Nasser was a substantial certainty.

"In order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus; *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 171, 539 N.E.2d 1114, 1116.

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Van Fossen, supra,* at paragraph six of the syllabus; *Sanek, supra,* at 171, 539 N.E.2d at 1116.

■ The focus of an intentional tort action under the standards set forth in *Van Fossen* is on the knowledge of the employer regarding the risk of injury. The plaintiff has the burden of proving by a preponderance of the evidence that the employer had "actual knowledge of the exact dangers which ultimately cause" injury. *Van Fossen, supra,* 36 Ohio St.3d at 112, 522 N.E.2d at 500.

Appellant essentially argues that the trial court erred in not directing a verdict in its favor at the close of the evidence, and in not granting a judgment n.o.v. after the jury returned a verdict for plaintiff. The standards for granting a directed verdict and a judgment n.o.v. are the same. *McNees v. Cincinatti Street Ry. Co.* (1949), 152 Ohio St. 269, 40 O.O. 318, 89 N.E.2d 138; *Sanek, supra,* 43 Ohio St.3d at 172, 539 N.E.2d at 1116. The intentional tort issue goes to a jury only if there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential issue of the case. The court must not weigh the evidence or the credibility of the witnesses. The test for granting a directed verdict or a judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant. *Sanek, supra,* at 172, 539 N.E.2d at 1116; *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511, 514; *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935.

Appellant argues that this court should not expand the concept of "dangerous conditions" to include adverse personal relationships within the definition of intentional tort under *Van Fossen, supra.* Appellant argues that such relationships are not objectively ascertainable and are beyond an employer's control. However, we note the standard for establishing an intentional tort "emerges not so much from the words used to formulate the test as it does from the decisions rendered in response to specific fact situations. Such is the nature of common law." *Sanek, supra,* 43 Ohio St.3d at 171, 539 N.E.2d at 1116, citing *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, 522 N.E.2d 477, 481. We believe this case consists of more than a simple personality conflict between an employer and an employee. This case involves a situation where an employer has knowledge of an employee's injury and gives physical assignments in contravention of doctor's orders. Such situations exceed a mere personality conflict and involve objectively ascertainable intentional acts. Further, appellant argues that Nasser's injury was not a substantial certainty because the doctor's notes do not state how long Nasser was to remain on light duty.

Evidence was presented showing that Lebus intended to injure Nasser and that Lebus assigned Nasser to jobs believing that Nasser's back injury was substantially certain to occur. *Goode v. Mottershead* (Sept. 29, 1988), Cuyahoga App. No. 54290, unreported, at 5, 1988 WL 113650. Further, evidence was presented from which such knowledge or intent could be inferred. *Id.* Appellant Parr's president testified that he ratified Lebus's conduct at Parr. Nasser never informed Lebus or Bodner that his doctor had permitted him to cease light duty. Thus, it is irrelevant that the doctor's notes omitted a time limit on the light duty. The facts in this case, construed most strongly in

favor of Nasser, permit reasonable minds to come to different conclusions as to whether the elements of dangerous condition and substantial certainty existed in proving an intentional tort by appellant Parr.

Accordingly, Parr's first and second assigned errors are overruled.

## II

■ Appellant Parr's third assigned error argues that the court erred in failing to grant its motion for summary judgment because Owen's affidavit supporting Nasser's brief in opposition did not meet the requirements of Civ.R. 56(E). Parr argues that Owen's affidavit was based on opinion, statements made without personal knowledge, and legal conclusions. These arguments lack merit.

Civ.R. 56(E), which concerns the form of affidavits, provides in pertinent part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  * * * "

■ Thus, it is essential that an affidavit set forth facts, not legal conclusions. *State v. Licsak* (1974), 41 Ohio App.2d 165, 70 O.O.2d 325, 324 N.E.2d 589; *Melzer Carpet Co. v. Barnes* (Oct. 23, 1980), Cuyahoga App. No. 41715, unreported, at 5. It is also essential that the affiant have personal, rather than second-hand, knowledge of the facts. *Olverson v. Butler* (1975), 45 Ohio App.2d 9, 74 O.O.2d 11, 340 N.E.2d 436; *Melzer Carpet Co., supra; Beldik v. Hryhorciw* (Dec. 24, 1981), Cuyahoga App. No. 43568, unreported, at 3, 1981 WL 4711. Where an affidavit containing opinions is made part of a motion for summary judgment, it is properly considered by a trial or reviewing court when it meets the requirements set forth in Civ.R. 56(E) and Evid.R. 701. *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 4 OBR 155, 446 N.E.2d 454, paragraph two of the syllabus. Thus, an affiant's statements must set forth facts admissible in evidence. *Id.* at 67, 4 OBR at 157, 446 N.E.2d at 455.

On the whole, Owen's affidavit sets forth facts and was made on personal knowledge. Further, even if we consider two of Owen's statements to be opinions as appellant Parr claims, it is evident that the opinions are rationally based on Owen's perceptions and are helpful in determining the critical issue of this case, *viz.*, whether Parr committed an intentional tort. Therefore, Owen's affidavit complied with the requirements of Civ.R. 56(E). Accordingly, the court did not err in denying Parr's motion for summary judgment.

The third assigned error is overruled.

## III

Appellant Parr's fourth, fifth, sixth and eighth assigned errors argue that the court erred in failing to grant Parr's motion for a new trial due to erroneous jury instructions, the jury's finding was contrary to the weight of the evidence, and the verdict was excessive.

In considering a motion for new trial, the trial court must exercise its discretion in determining whether a new trial is warranted under the circumstances. An appellate court, when reviewing that decision, may reverse only where it finds an abuse of discretion. The reviewing court is not to substitute its judgment for that of the trial court. *Markan v. Sawchyn* (1987), 36 Ohio App.3d 136, 138, 521 N.E.2d 824, 826, citing *Verbon v. Pennese* (1982), 7 Ohio App.3d 182, 7 OBR 229, 454 N.E.2d 976; *Jarmusch v. Gydosh* (Oct. 20, 1988), Cuyahoga App. No. 54480, unreported, at 3, 1988 WL 112863; *Zivoder v. Daugherty* (Aug. 16, 1984), Cuyahoga App. No. 47567, unreported, at 4.

### A

Appellant Parr's fourth assigned error argues that the court erred when it refused appellant's request to instruct the jury on the legal distinctions between the concepts of negligence, recklessness, and intent. Specifically, appellant concedes that the court correctly instructed the jury on the tripartite test to establish "intent" for the purpose of proving the existence of an employer's intentional tort committed against his employee, as found in paragraph five of the syllabus to *Van Fossen, supra.* However, appellant argues the court erred when it refused to instruct the jury verbatim on the legal distinctions between the concepts of negligence, recklessness, and intent, as found in paragraph six of the syllabus to *Van Fossen, supra.*[3]

The trial court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles. *State v. Scott* (1987), 41 Ohio App.3d 313, 535 N.E.2d 379, paragraph three of syllabus; *Cleveland v. Frank* (Mar. 1, 1990), Cuyahoga App. No. 56426, unreported, at 7, 9, 1990 WL 19321. Where a special instruction given by the court correctly states the law pertinent to one or more issues of the case, the giving of it does not constitute error, even though it is not a full and comprehensive statement of the law. *Lackner v. Burns* (1964), 175 Ohio St. 469, 26 O.O.2d 85, 196 N.E.2d 447, paragraph one

---

3. See Part I, *supra.*

of the syllabus; *Deckant v. Cleveland* (1951), 155 Ohio St. 498, 44 O.O. 448, 99 N.E.2d 609, paragraph one of the syllabus. Additionally, the existence of a proposed jury instruction which correctly states the issues or law in question does not mandate that the court use the proposed jury instruction verbatim. The court need only include the substance of the proposed instruction. *Echols v. Vernick* (June 11, 1987), Cuyahoga App. No. 52101, unreported, at 3, 1987 WL 12603; *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 7 OBR 124, 454 N.E.2d 541, paragraph five of the syllabus. Moreover, it is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph two of the syllabus. *Echols, supra,* at 2, citing *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 176, 51 O.O.2d 232, 237, 258 N.E.2d 597, 604. Thus, this court will not reverse unless an instruction is so prejudicial that it may induce an erroneous verdict. See *Wilson v. Dixon* (Mar. 29, 1990), Cuyahoga App. No. 56788, unreported, at 4, 1990 WL 37398.

Appellant correctly stated the law relative to the requested instruction on the definition of an intentional tort of an employer as found in *Van Fossen, supra,* paragraphs five and six of the syllabus. However, the court is not bound to give a proposed instruction in the exact language requested by the proponent. In the instant case, the court's language adequately instructed the jury on the tripartite test to be applied in order to establish an intentional tort of an employer. In fact, the court read the tripartite test verbatim from paragraph five of the syllabus to *Van Fossen, supra.* The court included the substance of the proposed instruction. We believe appellant's proposed language, as found in paragraph six of the syllabus to *Van Fossen, supra,* would have confused the jury because it would have been both redundant and immaterial.

The instruction would have been redundant because part of paragraph six is actually the second element of the tripartite test found in paragraph five. The instruction would have been immaterial because the remainder of paragraph six refers to the concepts of negligence or recklessness. However, Nasser's claim was based on intentional tort and not the negligence or recklessness of appellant. Clearly, R.C. 4121.80 provides only for intentional tort causes of action under the workers' compensation laws. If the jury had determined, using the tripartite test, that appellant's conduct was not intentional, Nasser would not have been able to recover under the concepts of negligence or recklessness, even if appellant had been negligent or reckless. The proposed instruction would have drawn the jury's attention away from the principle of law that Nasser was attempting to stress. *Lackner, supra,* 175 Ohio St. at 474, 26 O.O.2d at 88, 196 N.E.2d at 449. The jury would have

been misled and confused. We note that the cases appellant relies on state that an intentional tort action against an employer must be determined according to the standards set forth in the fifth *and* sixth paragraphs of the syllabus to *Van Fossen, supra.* However, those cases pertain to issues as to whether the trial court's decisions were proper regarding motions for summary judgment, directed verdict, judgment n.o.v., and for a new trial only. None of these cases has dealt with jury instructions. The charge given by the court is the standard charge approved by the Ohio Judicial Conference and published in its Ohio Jury Instructions, Section 302.05(2) ("OJI"). We do not feel the court abused its discretion in limiting the instruction to the standard one suggested in OJI. *Jenkins, supra,* 7 Ohio App.3d at 100–101, 7 OBR at 131–133, 454 N.E.2d at 550–551.

Appellant has failed to show that it has been prejudiced by the court's failure to give the jury instruction as submitted by appellant. *Echols, supra,* at 3. The court correctly instructed the jury and the jury instruction regarding "an employer's intent" was not misleading or incomplete. Thus, the court did not err by refusing to grant appellant's motion for a new trial on this basis.

Accordingly, the fourth assigned error is overruled.

B

The fifth assigned error argues that the court erroneously instructed the jury that they could consider the financial resources of appellant in determining the amount of punitive damages. This argument lacks merit.

Evidence of a defendant's wealth is relevant when considering an award of punitive damages. *Spadafore v. Blue Shield* (1985), 21 Ohio App.3d 201, 21 OBR 215, 486 N.E.2d 1201, paragraph five of the syllabus. Moreover, appellant's failure to object to the instruction amounts to a waiver of the claimed errors in the instruction. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus.

Accordingly, the fifth assigned error is overruled.

C

Appellant's sixth assigned error argues that the jury's finding that appellant had knowledge of a dangerous condition within its workplace was against the manifest weight of the evidence and that the denial of a new trial was an abuse of discretion.

It is well established that when a reviewing court is required to decide whether a verdict is supported by evidence of manifest weight, the

court is guided by a presumption that the determination of the fact finder was indeed correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.; C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

For purposes of determining whether a new trial is in order, the trial judge must remember that it is initially the jury's function to weigh the evidence and to pass on the credibility of the witnesses. *Poske v. Mergl* (1959), 169 Ohio St. 70, 73–74, 8 O.O.2d 36, 39–40, 157 N.E.2d 344, 345; *Jarmusch, supra,* at 4; *Verbon, supra,* 7 Ohio App.3d at 183, 7 OBR at 229, 454 N.E.2d at 978. When the court is faced with a motion for a new trial, however, it is then its duty to weigh the evidence. *Jarmusch, supra.* A trial court may not set aside the verdict of the jury based only upon a difference of opinion. *Verbon, supra.*

The record in the instant case fails to support the assertion that the verdict was not supported by the weight of the evidence or that the court erred in not granting a new trial. Appellant claims that the evidence does not support the jury's finding that appellant had knowledge of a dangerous condition within its workplace because Owen had only warned Paula Osborne, personnel director, that "Lebus was out to hurt Nasser." However, the record reveals that Owen also testified that he had warned his supervisors, George Mitchell, manufacturing manager, and Francis DeVille, president, of the dangerous condition. Further, Mitchell testified that he had fired Lebus because Lebus did not treat all employees equally, but later rehired Lebus to give him a second chance. Mitchell felt Lebus improved for a while, but later reverted to his old habits because employees were being assigned to jobs they could not or should not do.

Lebus and Bodner essentially denied all allegations set forth in Nasser's and Owen's testimony. However, Lebus's credibility and Bodner's credibility were shown to be questionable. (See the facts portion of this opinion.)

Absent a clear demonstration that the trial court abused its discretion in not granting a new trial pursuant to Civ.R. 59(A)(6), this court cannot disturb the court's determination. *Poske, supra,* 169 Ohio St. at 75, 8 O.O.2d at 40, 157 N.E.2d at 348.

A review of the evidence presented by the record indicates that there was no abuse of discretion by the court. The jury verdict was supported by

competent and credible evidence and the judge did not err in denying the motion for a new trial.

Accordingly, the sixth assigned error is overruled.

### D

■ Appellant's eighth assigned error contends that the court abused its discretion by not granting a new trial where the jury's damage award was excessive. We do not agree.

■ In a personal injury suit, a damage award should not be set aside unless the award is so excessive that it appears to have been awarded as a result of passion or prejudice or unless it is manifestly against the weight of the evidence. *Hancock v. Norfolk & Western Ry. Co.* (1987), 39 Ohio App.3d 77, 85, 529 N.E.2d 937, 945; *Wilson, supra,* at 4; *Stalla v. Ohio Bell Tel. Co.* (Mar. 15, 1990), Cuyahoga App. No. 56512, unreported, at 14, 1990 WL 28817; *Toledo, Columbus & Ohio River RR. Co. v. Miller* (1923), 108 Ohio St. 388, 140 N.E. 617, paragraph three of the syllabus; *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462, syllabus.

Evidence adduced at trial reveals that Nasser sustained a crippling back injury. Nasser's injury is of a permanent nature and has substantially diminished his ability to engage in physical activities. Nasser will never be able to return to the type of work he performed at Parr. Nasser is in constant severe pain and his family and social life has dramatically changed since the injury.

■ This panel may not decide if we would set aside a verdict were we presiding at trial, but must determine whether the damages awarded are so high that to permit the award to stand would be a denial of substantial justice. *Hancock, supra,* 39 Ohio App.3d at 85, 529 N.E.2d at 945; *Wilson, supra,* at 6. We find that the record before us is devoid of evidence indicating the jury was wrongfully influenced. In the absence of such influence, neither this court nor the trial court may substitute its judgment for that of the jury. *Toledo, Columbus & Ohio River RR. Co., supra; Litchfield, supra; Wilson, supra,* at 7. Further, when a verdict is supported by competent, credible and substantial evidence, it is an abuse of discretion to grant a new trial. *Hancock, supra; Wilson, supra.* In view of the uncontroverted evidence regarding Nasser's injuries, we cannot say that the verdict is against the weight of the evidence or that the jury was influenced by passion and prejudice.

Accordingly, the eighth assigned error is overruled.

### IV

The seventh assigned error argues that the court erred in failing to grant appellant's motions for directed verdict, judgment n.o.v. and new trial because the jury's verdict was not supported by competent and admissible evidence. Appellant argues that testimony by Nasser's sole medical expert Dr. Gerald Seltzer, an internist specializing in workers' compensation injuries, was inadmissible because Dr. Seltzer is neither an orthopedic surgeon nor a neurosurgeon. We disagree. Any doctor licensed to practice medicine is competent to testify on medical issues, including the relationship of medical expenses to a particular injury or cause. The fact that the doctor may have a different specialty bears only upon the weight to be given the evidence, not its admissibility. *Rouse v. Riverside Methodist Hosp.* (1983), 9 Ohio App.3d 206, 9 OBR 355, 459 N.E.2d 593, paragraph three of the syllabus.

Appellant argues that the court erred in permitting leading questions in the direct examination of Dr. Seltzer. The questions to which appellant objected read as follows:

"Q. Doctor, do you have an opinion, based on a reasonable degree of medical certainty, whether or not the injuries you found and testified to concerning Nasser Youssef's back were caused by lifting or pushing heavy objects at work while restricted to light duty and to lift no more than 20 pounds?

"* * * *

"A. I have an opinion.

"Q. What is that opinion, Doctor?

"A. That is that the injuries that the patient sustained were due to his being required to exceed the 20 pound restrictions that were placed on him.

"Q. Okay. I'm going to ask you another question.

"Doctor, do you have an opinion, based on a reasonable degree of medical certainty, whether Nasser Youssef's injuries you described and treated were approximately or directly caused by dumping 13 drums weighing approximately 400 pounds each on June 14th, 1985?

"* * * *

"THE WITNESS: I have an opinion.

"Q. What is that opinion, Doctor?

"A. And that is that his injuries, the present injuries were caused by the dumping of those extremely heavy barrels."

We find that Dr. Seltzer's statements were not in response to leading questions. Moreover, it is within the discretion of the trial court to permit

leading questions on direct examination. *State v. Miller* (1988), 44 Ohio App.3d 42, 541 N.E.2d 105, paragraph three of the syllabus; *State v. Lewis* (1982), 4 Ohio App.3d 275, 4 OBR 494, 448 N.E.2d 487, paragraph three of the syllabus. Thus, upon review of the record and even if we were to find that the questions were leading, we could not conclude that the court exceeded its discretion.

The seventh assigned error is overruled.

### Cross–Appeal

Nasser's cross-appeal raises three assigned errors.

### V

In the first assigned error, Nasser challenges the denial of his motion for prejudgment interest. In particular, Nasser claims that the trial court erred in denying his motion for prejudgment interest because Parr did not make a good faith effort to settle the case.

Prejudgment interest is properly awarded where a party has failed to make a good faith effort to settle. R.C. 1343.03(C). Construing the "good faith effort to settle" language in the statute, the Supreme Court has stated:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus.

The decision as to whether a party's settlement efforts comport with the good faith requirement is left to the sound discretion of the trial court. *Id.* at 159, 25 OBR at 201, 495 N.E.2d at 573. See, also, *Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 543 N.E.2d 1277; *Cox v. Fisher Fazio Foods* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055; *Stalla, supra,* at 16; *McNamara v. Best Products Co.* (Feb. 16, 1989), Cuyahoga App. No. 55012, unreported, at 7, 1989 WL 12936.

Evidence adduced at the hearing on Nasser's motion indicates that Nasser's complaint sought $750,000 in damages. Parr offered Nasser a $20,000 settlement. Nasser refused. Thereafter, prior to trial Parr offered Nasser a $75,000 settlement. Nasser refused and was awarded by the jury an amount in excess of his prayer.

We find that there was sufficient evidence to support the judgment of the trial court and find no indication in the record that the court's decision was arbitrary or unreasonable.

Accordingly, the first assigned error is overruled.

## VI

Nasser's second and third assigned errors challenge evidentiary rulings by the court regarding Nasser's witnesses' testimony. These assigned errors are moot because Nasser's arguments are only based in anticipation of a new trial.

The judgment is affirmed.

*Judgment affirmed.*

PRYATEL and MARTIN, JJ., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, and WILLIAM MARTIN, J., retired, of the Carroll County Court of Common Pleas, sitting by assignment.