[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Lucas County Court of Common Pleas following a jury trial. The jury found that appellants, Henry J. Rybaczewski and Mary Lou Rybaczewski, were entitled to a total of $796.80 from appellee, Christopher R. Kingsley, for the injuries sustained in a rear-end collision which occurred on December 23, 1990. For the reasons that follow, this court affirms the judgment of the trial court.
The undisputed facts are as follows. In 1988, Mr. Rybaczewski was involved in an automobile accident. Thereafter, he underwent four back surgeries with Dr. Howard Rosenblatt, an orthopedic surgeon, on his low back, involving the area of his fourth lumbar vertebra to his sacrum (L4, L5, and S1). Initially, discs were removed to cure his radioculopathy, i.e., disc pain. Mr. Rybaczewski's pain would lessen for a period of time following the surgeries, but would eventually recur. After the third surgery, the radioculopathy pain had stopped, but then Mr. Rybaczewski began experiencing pain from instability. To correct the unstable back condition, on January 19, 1990, Dr. Rosenblatt performed a spinal fusion of L4, L5 and S1.
As to the injury of aggravation at issue, Mr. Rybaczewski was stopped at a stop sign when appellee slid on some ice while stopping and ran into Mr. Rybaczewski. The estimated damage to Mr. Rybaczewski's car was approximately $35. The police report indicated no damage to the vehicles. After the December 1990 accident, Mr. Rybaczewski experienced increased pain in his lower back. Dr. Rosenblatt continued treating Mr. Rybaczewski until June 1992.
On May 5, 1995, Mr. Rybaczewski saw Dr. Gregory P. Graziano at the University of Michigan Medical Center. Dr. Graziano determined that Mr. Rybaczewski had pseudoarthrosis of a previously performed fusion at L4-L5 and S1. Dr. Graziano recommended an operative repair, consisting of a posterior instrumentation with bone grafting, as well as, a second surgery of anterior grafting. These surgeries were performed on October 5, 1995 and October 18, 1995. Subsequently, pain in Mr. Rybaczewski's neck increased and on May 9, 1996, Dr. Graziano performed a third surgery, this time on Mr. Rybaczewski's cervical vertebrae.
On April 28, 1994, appellants' initial complaint against appellee was dismissed without prejudice, with a right to refile such claims within one year. On April 11, 1995, appellants refiled their complaint against appellee Christopher R. Kingsley and Westfield Insurance Company.[1] On December 28, 1995, the parties entered a consent judgment entry, which stated as follows:
 "The parties hereto have consented to Judgment being entered for Plaintiff on the issues [sic] of liability with trial limited to the issues of: (1) proximate causal relationship between Defendant Christopher Kingsley's negligence in the automobile accident in question and Plaintiffs' injuries; and, (2) damages for any such injuries. It is so ordered."
Although the parties referred to "liability," because they reserved proximate cause and damages to be determined at trial, the parties actually only consented to a finding of negligence.
Trial commenced on August 12, 1996. On August 16, 1996, the jury awarded Mr. Rybaczewski $796.80 for his personal injuries and awarded Mrs. Rybaczewski no amount for her loss of consortium claim.
On September 5, 1996, appellants filed a Civ.R. 59 motion for new trial or additur. Appellants argued that based on the irregularity of the jury selection, the court's failure to allow testimony by Dr. Graziano regarding the reasonableness and necessity of Mr. Rybaczewski's medical bills, and the court's refusal to instruct the jury regarding an "eggshell plaintiff", appellants should be granted a new trial. Additionally, appellants argued that a new trial should be granted because the damages awarded were so inadequate that they appear to be the result of passion or prejudice. On January 9, 1997, the trial court denied appellants' motion for an additur or, in the alternative, for a new trial.
Appellants filed their notice of appeal on February 10, 1997. Appellants assert the following assignments of error:
 "I. THE TRIAL COURT ERRED IN ALLOWING THE DEFENDANT TO PEREMPTORILY CHALLENGE ONE OF THREE BLACK JURORS AND THEN NOT EXERCISE HIS LAST PEREMPTORY CHALLENGE TO PREVENT THE SECOND OF TWO REMAINING BLACK JURORS FROM BEING SEATED AS A JUROR WITHOUT ARTICULATING A RACIALLY NEUTRAL REASON THEREFOR.
 "II. THE TRIAL COURT ERRED BY REFUSING TO PLAY VIDEOTAPE TESTIMONY OF DR. GREGORY P. GRAZIANO'S OPINION THAT PLAINTIFF HENRY RYBACZEWSKI'S OHIO MEDICAL BILLS WERE REASONABLE AND NECESSARY TO TREAT INJURIES SUFFERED IN THE SUBJECT 12/23/90 REAR-END AUTO COLLISION AND OPINIONS BASED UPON HISTORY RELATED TO DR. GRAZIANO BY HENRY RYBACZEWSKI FOR PURPOSES OF TREATMENT.
 "III. THE TRIAL COURT ERRED IN SUSTAINING DEFENDANT'S OBJECTIONS TO DR. GRAZIANO'S VIDEOTAPE QUESTIONS WHICH FAILED TO COMPLY WITH CIV.R. 32(D)(3)(b).
 "IV. THE TRIAL COURT ERRED IN REFUSING TO GIVE PLAINTIFF'S REQUESTED `EGGSHELL PLAINTIFF' INSTRUCTION.
 "V. THE TRIAL COURT ERRED IN REFUSING TO GRANT PLAINTIFF'S ALTERNATIVE MOTION FOR A NEW TRIAL OR ADDITUR.
We will initially consider appellants' fifth assignment of error, in which they argue that the trial court erred in denying their motion for a new trial or, in the alternative, motion for additur. Specifically, appellants argue that a new trial should be granted where the damages awarded were so inadequate as to appear to have been the result of passion or prejudice and where it appears that the jury failed to consider an element of damages established by uncontroverted evidence.
Appellants further argue that appellee presented no opinions of any kind to rebut Dr. Graziano's and Dr. Rosenblatt's medical opinions that Mr. Rybaczewski's symptoms and medical expenses were the direct and proximate result of the December 23, 1990 accident. According to appellants, the only testimony was Dr. Albert I. King, a biomechanical engineer, who testified regarding the effects of low speed collisions. Appellants assert that Dr. King improperly gave a "medical opinion" that Mr. Rybaczewski could not have been injured at all in the December 23, 1990 accident. Because the jury returned verdicts for appellants, the jury must have found that appellee's negligence proximately caused injury to or aggravated a prior condition of appellants, but minimized the injury based on King's "pseudo-medical testimony." Appellants assert that the jury award was not sustained by the weight of the evidence and was contrary to law.
In Ohio, it is well established that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive. Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 655, citing, Toledo,Columbus Ohio River RR. Co. v. Miller (1923), 108 Ohio St. 388,402-403. A judgment entered on a verdict may be set aside when it is apparent that the jury failed to include all the items of damage making up plaintiff's claim and the inadequacy of the verdict is so gross as to shock the sense of justice and fairness.Sherer v. Smith (1949), 85 Ohio App. 317, 322-323.
"A new trial will not be granted where the verdict is supported by competent, substantial and apparently credible evidence." Verbon v. Pennese (1982), 7 Ohio App.3d 182, 183. InYoussef v. Parr, Inc. (1990), 69 Ohio App.3d 679, 690, the court noted:
 "In considering a motion for new trial, the trial court must exercise its discretion in determining whether a new trial is warranted under the circumstances. An appellate court, when reviewing that decision, may reverse only where it finds an abuse of discretion. The reviewing court is not to substitute its judgment for that of the trial court." (Citations omitted.)
See, also, C.E. Morris Co. v. Foley (1978), 54 Ohio St.2d 279. An abuse of discretion implies that a court's attitude is "unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Our review of the record in this case fails to support appellants' assertion that the trial court erred in not granting a new trial. Although Dr. Rosenblatt and Dr. Graziano testified that Mr. Rybaczewski's pain and injuries were aggravated by the December 1990 accident, there was a great deal of testimony to the contrary.
Dr. Rosenblatt testified that, after his initial three surgeries, Mr. Rybaczewski would experience some relief from pain, but the pain would recur. He also testified that, although Mr. Rybaczewski was improving after his fourth operation, he still experienced some pain, albeit less than before. This testimony was corroborated by Mr. Rybaczewski's testimony.
Mr. Rybaczewski suffered from diabetes and both Dr. Rosenblatt and Dr. Graziano testified that the diabetes could have prevented the union of the vertebrae to completely heal. In general, the diabetes caused Mr. Rybaczewski to heal at a slower rate than people without diabetes. Dr. Rosenblatt also agreed that Mr. Rybaczewski's substantial size was "an argument against the success of a fusion." Dr. Rosenblatt further testified that Mr. Rybaczewski had a degenerative process working on his spine because of the diabetes and his arthritis.
In addition to his back problems, Mr. Rybaczewski went to the hospital on July 9, 1990 complaining of pain in his legs and arms. A Magnetic Resonance Imaging ("MRI") showed a bulging at C5, 6 and C6, 7, of his cervical spine area, i.e., his neck. Dr. Rosenblatt testified that the bulging was not "a pathological entity," it could "be a normal variant or a prodrome or harbinger of things to come, such as degenerative disc disease."
In January 1991, Dr. Rosenblatt examined Mr. Rybaczewski. He testified that following the December 1990 accident, Mr. Rybaczewski was in a lot of distress, complaining of pain all over. Upon reviewing the x-rays of his low back, however, Dr. Rosenblatt testified that he still had a solid spinal fusion from L4 to S1, and that he felt they were very fortunate that there was no further damage.
On May 28, 1992, Mr. Rybaczewski was hit from behind while his car was parked at Anderson's. He went to the hospital and complained of neck and back pain at that time. Within three days of this collision, he incurred bills for x-rays of his cervical and lumbar spine and shoulder and for a collar and brace he received. After the May 1992 collision, he was diagnosed with lumbosacral sprain, i.e., torn tissue in his low back.
On August 17, 1990, Rosenblatt wrote a letter in which he stated that Mr. Rybaczewski was "an absolute catastrophe at this time." He further wrote, "[h]e certainly is unable to maintain constant remunitive [sic] work and at the present time and certainly for the past year or so has been totally disabled. Just when Henry will be able to go to work, if he ever will be able to go to work, I do not know."
Although Dr. Rosenblatt testified at trial that the 1990 accident aggravated Mr. Rybaczewski's condition, he also testified in an earlier deposition, taken as part of the lawsuit for the 1988 collision, "I feel that if [Mr. Rybaczewski] had not been in the second accident at all, it would still be an on-going situation with [him]." Dr. Rosenblatt, however, did say he was wrong for having made that statement.
Another contradiction in Dr. Rosenblatt's testimony was that at his last appointment with Mr. Rybaczewski in June 1992, Dr. Rosenblatt felt that the spinal fusion was solid. At trial, however, he indicated that there never was a solid union because there was "some degree of interference with the whole sum and substance of the healing process relative to the second incident." Dr. Rosenblatt attributed the interference to the fact that Mr. Rybaczewski was one hundred times more susceptible to injury with a low velocity impact accident than a healthy person would be who had no back trouble.
Dr. Graziano also testified on behalf of appellants. Although Dr. Graziano testified that Mr. Rybaczewski's 1990 collision made his back problems worse, Dr. Graziano did not review the prior medical records and based his opinion on the history provided to him by Mr. Rybaczewski.
As indicated, appellants medical testimony was not uncontroverted. Additionally, contrary to appellants' assertion, appellee is not required to present a medical expert to rebut appellants' doctors' testimony.
As to the testimony of King, Ph.D., we find that he did not offer a "medical opinion." King testified that he was a biomechanical engineer and, as such, studied crash situations and causes of pain. He conducted crash tests with anthrophoromics, non-human dummies, and used live animals in his pain clinic to study nerve responses. Appellants' counsel stipulated to King's qualifications as an expert.
King computed the gravitational ("G") forces experienced during very low speed impacts. Based upon his calculations, he testified that the G's of appellants' car when hit by appellee was consistent with everyday G loads, such as, sitting, coughing, or sneezing.
King also testified that based upon his studies, in order to have pain, one must have nerve endings that sense pain and soft tissue that is considerably deformed to make the nerve endings "go off," i.e., sense pain. He stated, however, that people with an inflammatory process going on, such as, people with arthritis, herniated discs, or bone spurs, have nerve endings that are very sensitive. Nerve endings in their natural state would have to have the tissue stretched before pain fibers would go off. However, based upon his studies on rats and rabbits, he found that inflamed nerve endings would go off by themselves, even without stimulation. Inflamed tissue that was given stimulation would get a tremendous burst of pain activity.
Based on this finding, King testified that pain in inflamed tissue is not equal to injury:
 "* * * it's a case wherein a minor collision, where you normally, you would not be injured, the people who say they feel pain really — here pain [is] not equal to injury. It's just like you twisted your ankle and the next morning it's all swollen and very painful, you cannot walk on it, and you sit in bed you try to move your foot and it hurts. Well, did you reinjure your ankle? No, you didn't. You merely set off the pain fibers because they're sensitive now. In many of these cases pain is not injury."
King was given a hypothetical that Mr. Rybaczewski was involved in an accident in 1988, that he underwent a series of surgeries that ended in 1990, that he still had some pain thereafter, and that he was struck from behind by a car going approximately five m.p.h. King was then asked, based on his training and experience, to a reasonable degree of scientific certainty, whether Mr. Rybaczewski sustained injury to his spine in the 1990 accident. Counsel for appellants objected on the basis of the adequacy of the hypothetical. This objection was overruled. King gave his opinion, and stated:
 "The opinion is that he did not sustain any injury. He may have sustained a short period of increased pain, but his continuing problems are due to his continuing degeneration of his spine."
Counsel for appellants objected and moved to strike the last sentence, arguing that it called for a medical opinion which the witness was not qualified to make. The trial court sustained appellants' objection.
On cross-examination, appellants' counsel brought up King's opinion that Mr. Rybaczewski would not have sustained injury:
 "Q. Thank you. Now you also testified under direct examination, I believe, that in your opinion, very low speed there is no possibility of injury; is that right?
"A. Yes.
 "Q. So that if someone is in a vehicle that is struck, let's say, at five miles per hour and they have an unhealed spine fusion that is weak, has not gotten rigid yet, it's your opinion here today that a person like that could not — be impossible for them to be injured?
 "A. Well there is a question of what you mean by injury. If he feels pain, that's pretty normal. That sensitized nerve ending would give him pain. It doesn't mean injury."
Appellants' counsel further questioned:
 "Q. Would you tell the jury how you can say with such certainty here today it's your opinion that Henry couldn't possibly have suffered any injury in this accident?
 "A. Because of the accelerations involved are comparable to accelerations in normal daily activity, just as sneezing and coughing. If he was injured by this accident he would injure himself every time he sneezed and coughed, therefore, assuming he was injured then we wouldn't know which one injured him last."
Appellants' counsel failed to object to King's alleged, "pseudo-medical testimony" that Mr. Rybaczewski was not injured by the collision with appellee. Counsel objected to the statement, "[h]e may have sustained a short period of increased pain, but his continuing problems are due to his continuing degeneration of his spine," which the trial court struck. However, appellants did not object to King's opinion that Mr. Rybaczewski was not injured in the accident. This failure to object is also evidenced by the fact that appellants' counsel referred to King's opinion during cross-examination.
Generally in civil cases, errors which arise during the course of the proceedings and are not brought to the attention of the trial court by objection, or otherwise, at the time when such error could have been avoided or corrected, are waived and may not be reviewed on appeal. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121; LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121,123; Civ.R. 51(A). Exceptions to this rule may be allowed in the case of "plain error." The Supreme Court of Ohio, however, has limited the application of the plain error doctrine in civil cases:
 "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. [Citations omitted.]" Goldfuss at syllabus.
We find that King did offer a "medical opinion" when he stated that Mr. Rybaczewski was not injured by the accident. This is a question that requires expert medical testimony by a physician. The most that King should have been permitted to testify to was the amount of force appellant experienced in the accident. However, appellants did not object to this particular statement and, in view of all of the evidence, we find that this is not one of those extremely rare cases to which the plain error doctrine should apply. See Goldfuss, supra. Because there were a number of inconsistencies with appellants' expert testimony regarding whether Mr. Rybaczewski's injuries were caused by the December 1990 accident with appellee, the jury had substantial credible evidence before it to support their decision, regardless of King's testimony.
Accordingly, we find that the trial court did not abuse its discretion in denying appellants' motion for a new trial or, in the alternative, for additur. See Youssef, supra. The verdict was supported by some competent, credible evidence. See Verbon,supra. Additionally, we find that the jury did not fail to include all the items of damage making up appellants' claims. SeeSherer, supra. Based on the evidence, a reasonable jury could find that Mr. Rybaczewski did not suffer additional injuries as a result of the accident with appellee, but did suffer pain enough to warrant a trip to the hospital. Such a finding would be consistent with the jury awarding Mr. Rybaczewski $796.80, the amount of the medical bills incurred on December 23, 1990.
Accordingly, we find appellants' fifth assignment of error not well-taken.
In their first assignment of error, appellants argue that the trial court erred in allowing appellee to peremptorily challenge one of three black jurors and then not exercise his last peremptory challenge to prevent the second of two remaining black jurors from being seated as a juror without articulating a racially neutral reason therefor.
In order to state a prima facie case of purposeful discrimination under Batson v. Kentucky (1986), 476 U.S. 79, an accused must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race. State v. Moore (1998), 81 Ohio St.3d 22, 28, citing, Statev. Hernandez (1992), 63 Ohio St.3d 577, 582; State v. Hill (1995),73 Ohio St.3d 433, 444-445. A private litigant in a civil case is also precluded from using peremptory challenges to exclude jurors on account of race. Edmonson v. Leesville Concrete Co., Inc.
(1991), 500 U.S. 614. Although appellants are not the same race as the peremptorily challenged juror, pursuant to Powers v. Ohio
(1991), 499 U.S. 400, appellants have standing to raise an equal protection argument on behalf of a juror.
If the accused makes a prima facie case of discrimination, the state must then come forward with a neutral explanation. Hill, supra at 445. As set forth in Batson:
 "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See McCray v. Abrams
[2nd Cir., 1984], 750 F.2d 1113, at 1132; Booker v. Jabe, 775 F.2d 762, 773 (CA6 1985), cert. pending, No. 85-1028 [certiorari granted and judgment vacated (1986), 478 U.S. 1001]. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race. * * * Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirm[ing] [his] good faith in making individual selections.' Alexander v. Louisiana [1972], 405 U.S. 625, at 632. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause `would be but a vain and illusory requirement.' Norris v. Alabama, [(1935), 294 U.S. 587], at 598. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." (Footnotes omitted.) Batson, supra at 97-98.
Once a race-neutral explanation for the peremptory challenge has been offered and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether a prima facie showing has been made becomes moot.State v. Hernandez, supra at 583, citing Hernandez v. New York
(1991), 500 U.S. 352.
"Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means." Hicks v. Westinghouse MaterialsCo. (1997), 78 Ohio St.3d 95, 99. The inquiry, therefore, is "whether the trial judge's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process." Id. A trial court's finding of no discriminatory intent "will not be reversed on appeal absent a determination that it was clearly erroneous." Hernandez,63 Ohio St. 3d at 583. Trial judges, in supervising voir dire, are best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility.Hicks, supra at 102, citing, Batson at 98, fn.21.
In this case, appellee used a peremptory challenge to dismiss one of three African-Americans in the venire. Seated on the jury was one African-American and the third was an alternate. Appellants' counsel objected to the peremptory challenge and stated, "Your Honor, I would challenge that on the basis that she, * * * is a black lady, and I would represent to the Court that the defendant, before they can strike a minority member off the jury, that they must have a racially neutral articulable reason for doing so and I request the Court —. " Appellee's counsel responded:
 "I don't think he's even right that I have to articulate a reason, and I'd also point out she's one of several black members on our prospective panel. I didn't get good vibes, and it's my right in peremptory challenge with no reasons stated."
Appellee's counsel further stated that race was not an issue in the case and that appellants' counsel had to "believe it's racially motivated," in order to invoke Batson. The trial court stated that a neutrally based reason was required. Appellee's counsel then stated:
 "Perhaps her frown at me when asking several questions was reason enough. Just I was serious when I expressed the reason, plus an obvious disinterest, plus the frown."
The trial court then allowed the juror to be excused for the following reason:
 "On the basis that [appellee's counsel] determined that he didn't get good sense of what her answers were, if she was interested in sitting on this case and whether he read that by what she verbally said or what her expressions were Mr. Bahret — "
At this point appellants' counsel interrupted. The trial court proceeded with the peremptory challenges thereafter.
Appellants assert that no questions were posed to the excused juror by appellee's counsel. Although she was not singled out for questioning, counsel asked the entire venire a number of questions, such as, did anyone feel one side or the other had a good cause because they were in court; did everyone understand there are two sides to every story; did anyone not form an opinion as to whether the guy, the security guard, in Atlanta blew up the [stadium]; did everyone want the whole truth, not just half the medical records or half the history; did they all feel they could decide whether Mr. Rybaczewski was injured and what would be fair compensation; did anyone feel that because appellee is legally responsible that someone must have been injured; did anyone believe that it was possible to disprove that someone had pain; did anybody feel they could not say "no" if the evidence warranted saying "no"; could they decide the case without allowing their sympathy interfere with their thinking; would everyone not allow the objections to flaw their thinking; could everyone stick up for themselves in the jury room. We do not know which questions were responded to with a frown by the excused juror.
Obviously, body language and facial expressions cannot be recorded in the transcript. Also, a general disinterest in the proceedings would only be evident through observation, not questioning. Therefore, we must rely on the keen eye of the trial court to assess the significance of these nonverbal responses or reactions.
The trial court demonstrated that it had a clear understanding of Batson and Powers. Based on the trial court's assessment, appellee's race-neutral explanation was sufficient to find that there was no discriminatory intent in excusing this juror. Because the trial court is best equipped to resolve discrimination claims in jury selection, see Hicks, and because the neutral reason provided was based on nonverbal responses which only persons present in court could observe, we find that the trial court's finding of no discriminatory intent was not clearly erroneous.
Appellants also argued that appellee should have exercised his final peremptory challenge in order to allow the African-American alternate juror to sit on the jury. We find that appellants' argument has no legal basis.
Accordingly, we find appellants' first assignment of error not well-taken.
We will consider appellants' second and third assignments of error together as they relate to the same deposition testimony. Appellants argue that the trial court erred by precluding Dr. Graziano's testimony regarding: (1) the reasonableness and necessity of Mr. Rybaczewski's Ohio medical bills allegedly incurred as a result of the December 1990 accident; and (2) his opinions based upon Mr. Rybaczewski's history given for purposes of treatment. Appellants also argue that, based on Civ.R. 32(D)(3)(b), the trial court erred in sustaining appellee's objections to Dr. Graziano's testimony.
In order for us to review these alleged errors, appellants had the responsibility to support their assignments of error with a record of the necessary facts, testimony, and evidentiary matters. See App.R. 9(B). Appellants, however, failed to provide us with the transcript of the trial court proceedings addressing Dr. Graziano's testimony and ruling on appellee's objections. Moreover, the record does not include which portions of Dr. Graziano's testimony were excluded. Thus, in the absence of a complete record, we must presume the regularity of the trial court's proceedings and accept its judgment. See Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409;Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199.
Therefore, we cannot say that the trial court abused its discretion in sustaining appellee's objections to Dr. Graziano's testimony. Accordingly, appellants' second and third assignments of error are found not well-taken.
In their fourth assignment of error, appellants argue that the trial court erred in refusing to give plaintiff's requested "eggshell plaintiff" instruction. Appellants' proposed instruction read as follows:
 "Plaintiff Henry Rybaczewski acknowledges that he was susceptible to such injury before the collision on December 23, 1990, and that, if not for such susceptibility, he would not have suffered such a degree of pain and injury. You are to disregard such susceptibility. A tortfeasor may not pick and chose [sic] his victim's injuries which the tortfeasor believes to be greater than for most or even all other victims.
 "A Defendant is liable for conduct toward another that causes an illness or injury, even though the type of harm is one to which the victim was especially susceptible.
 "The tortfeasor takes his victims as he finds him, the effect of his tortious act upon the person injured being the measure of damages.
 "This means that, even if most or all other persons who might have been involved in such collision would not have had such a severe injury or even any injury at all, such may not be used to reduce Defendant Kingsley's liability for injury and damages actually suffered by Plaintiff Henry Rybaczewski as a result of the December 23, 1990 collision."
The trial court, however, did include, in pertinent part, the following instruction regarding compensation of appellants for the actual injury proximately caused by the negligence of appellee:
 "If you find for the plaintiff Henry J. Rybaczewski, you will decide by the greater weight of the evidence an amount of money that will reasonably compensate him for the actual injury proximately caused by the negligence of the defendant Christopher Kingsley. The defendant takes his victim as he finds him, the effect of his negligence upon the person is the measure of damages."
In considering whether the trial court should have given a jury instruction, a reviewing court must view the instructions as a whole. The trial court does not commit reversible error if the instructions are sufficiently clear to enable the jury to understand the law as applied to the facts. Schade v. CarnegieBody Co., 70 Ohio St.2d at 210; Atkinson v. Internatl.Technegroup, Inc. (1995), 106 Ohio App.3d 349, 365. Generally, the court should give jury instructions requested by the parties if they are correct statements of law applicable to the facts of the case and reasonable minds might reach the conclusion sought by the instructions. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. However, the court need not give a proposed instruction in the precise language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles, and if the court's instruction correctly states the law pertinent to the issues raised in the case, the court's use of its own instruction will not constitute error. Atkinson, supra, at 365; Youssef, 69 Ohio App.3d at 690-91. Finally, the court has discretion to refuse to give a proposed jury instruction if that instruction is redundant or immaterial to the case. Bostic v.Connor (1988), 37 Ohio St.3d 144, paragraph two of the syllabus;Youssef, supra at 691.
While the court did not give the precise instruction that appellants requested, it fully and adequately instructed the jury on awarding damages and taking the plaintiff as you find him. Appellants argue that the instruction, "[t]he Defendant takes his victim as he finds him, the effect of his negligence upon the person is the measure of damages," was "totally inadequate to convey the substance of the law as to what are called eggshell plaintiffs." We disagree. The instruction was a correct statement of the law and the remainder of appellants' proposed jury instruction was redundant as it was just other ways of saying that the defendant takes his victim as he finds him. See Bostic,supra. Viewing the instructions as a whole, we cannot say that any omission by the trial court was so prejudicial as to induce an erroneous verdict. See Youssef, supra, at 691. Accordingly, appellants' fourth assignment of error is not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Westfield Insurance Company, appellants' underinsured motorist carrier, was also a listed defendant, however, because the liability coverage had not yet been exhausted, it is questionable that appellants' complaint effectively asserted a cause of action against Westfield. Nevertheless, the award to appellants did not exceed the liability coverage and, therefore, Westfield is not a party to this appeal.