DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff Dudley Thornton, Jr. has appealed from a judgment of the Summit County Court of Common Pleas that denied his motion for a new trial. This Court affirms.
 I.
Plaintiff is an African-American male who, in 1987, was hired by Defendant Summit County Board of Mental Retardation and Developmental Disabilities (Board). In 1993, Plaintiff responded to a job posting at the Board. He submitted a bid for a position as a worksite supervisor at Marhofer Chevrolet GEO (Marhofer). The Board, through contractual arrangement, is required to supply an employee to supervise the disabled Board's participants who are assigned to work in Marhofer's car wash.
Four individuals bid on the position at Marhofer. Each went through a structured interview process wherein the Board asked preset questions and scored the applicants according to his or her response. Ultimately, Meg Froelich was awarded the job.
As a result of his failed attempt, Plaintiff filed a grievance under the terms of the collective bargaining agreement between the Board and Plaintiff's union claiming a violation of the bargaining agreement and racial discrimination. He also filed a charge of racial discrimination with the Ohio Civil Rights Commission. During the pendancy of these complaints, Ms. Froelich began working at Marhofer.
Subsequently, an arbitrator awarded the Marhofer position to Plaintiff. The arbitrator found that the structured interview process was flawed and that Plaintiff should have been awarded the position due to his seniority. Thereafter, the Board offered Plaintiff an alternative position in lieu of exercising his rights under the arbitrator's ruling. After declining that opportunity, Plaintiff replaced Ms. Froelich and began work at Marhofer.
Almost immediately, Plaintiff began disrupting the Board's operations at Marhofer. First, he made an unwelcome request to Ms. Froelich for a date for which he received a written warning. Then, in his second performance review, it became apparent that Plaintiff's work was less than satisfactory. The Marhofer staff had complained about Plaintiff's repeated absences, and that as a result, the participants could not be adequately supervised. Marhofer was forced to assign one of its own, non-disabled employees to assist Plaintiff in supervision of the car wash. Eventually, Marhofer offered the Board an ultimatum: remove Plaintiff from his position or Marhofer would terminate its relationship with the Board.
The Board removed Plaintiff from the Marhofer position and placed him on administrative leave. He was subsequently reassigned to the Board's workshop in Tallmadge, Ohio. The Marhofer position was again posted for bids among the Board's bargaining unit. Ms. Froelich applied, and, as the only bidder, was awarded the position once more.
On September 27, 1996, Plaintiff filed his complaint, alleging that he was improperly removed from Marhofer as a result of racial discrimination and in retaliation for previously filing a complaint with the Ohio Civil Rights Commission. The matter was tried to a jury during August, 1998. A unanimous verdict was returned in favor of the Board and judgment was entered accordingly. A timely motion for new trial was made and subsequently denied. Plaintiff has appealed that denial, asserting four assignments of error.
II. ASSIGNMENT OF ERROR ONE
 It was error to deny [Plaintiff's] motion for a new trial because the verdict was not sustained by the weight of the evidence, as there was disparate treatment of [Plaintiff] in comparison to non-minority employees.
Pursuant to Civ.R. 59(A)(6), a new trial may be granted when the judgment is not sustained by the weight of the evidence.Pena v. Northeast Ohio Emergency Affiliates, Inc. (1995),108 Ohio App.3d 96, 103. However, a trial court's denial of a motion for a new trial will not be reversed absent a showing of an abuse of discretion. Weidner v. Blazic (1994), 98 Ohio App.3d 321, 334. An abuse of discretion is more than just an error of law or judgment, but requires that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Michelson v. Kravitz
(1995), 103 Ohio App.3d 301, 304, citing Berkey v. Senn (1989)65 Ohio App.3d 288, 291.
Moreover, while recognizing that it is within the trial court's sound discretion whether to grant a motion for a new trial based on Civ.R. 59(A)(6), this Court notes that a trial court may not set aside a verdict merely because it disagrees with the jury's conclusion. A trial court may order a new trial only when it appears to the court that manifest injustice has been done to the party challenging the verdict. The instant appeal presents no such dilemma.
At trial, the jury was required to determine: (1) whether the Board had discriminated against Plaintiff when it removed him from Marhofer; and, (2) whether he was removed in retaliation for his filing a grievance with the Ohio Civil Rights Commission. Plaintiff has consolidated these points and asserted that the jury's verdict was in error because the manifest weight of all the evidence introduced at trial showed that he was consistently treated differently because of his race. His somewhat nebulous argument distills into five separate components: the hiring process; the substitute position; his unwelcome advance towards Ms. Froelich; the Board's job performance expectations; and, the Board's actions in relation to white persons at different job sites. He has stated that as a result of these points, the trial court abused its discretion by not ordering a new trial. This Court disagrees.
 A. The Hiring Process
First, Plaintiff has asserted that both the hiring process and his failure to initially receive the Marhofer position indicate the Board's racial bias. He has based that assertion on the arbitrator's finding that the Board's interviewing process was flawed, and its order that the Board place Plaintiff at the Marhofer site because of his seniority. Further, Plaintiff has called to this Court's attention the fact that the Board awarded the position at Marhofer to a white, female, part-time employee instead of him. This evidence, Plaintiff has contended, indicates disparate treatment.
Conversely, the Board presented evidence that it preferred Ms. Froelich based solely on her interview score. The record indicates that Plaintiff scored poorly during his interview due to his inability to articulate answers to some of the scored, preset questions. Ms. Froelich, on the other hand, received the highest score of the four applicants. Therefore, according to Ian Blain, the Board's area supervisor, Ms. Froelich was awarded the Marhofer position.
Although the arbitrator determined that the interview process was flawed, a reasonable juror could have concluded that the Board could have truly preferred Ms. Froelich on her interview score alone. The record shows that Mr. Blain had relied on the personnel department to formulate the process, and nothing indicates that any other factors were at work. Accordingly, the trial court did not abuse its discretion by failing to grant a new trial.
 B. Substitute Position
Plaintiff has also argued that the Board's effort to give him an alternative assignment following his victory in the arbitration process demonstrates disparate treatment. After the arbitrator found for Plaintiff, the Board offered Plaintiff a position at an alternative worksite doing lawncare. Plaintiff took several days to consider the offer, but ultimately declined it. The lawncare position was never filled.
At the time of the offer, Ms. Froelich had been working at Marhofer for approximately ten months. She had maintained a good attendance record and developed a routine. At trial, it was undisputed that Ms. Froelich did an outstanding job at Marhofer and that the Marhofer staff was extremely pleased with her performance.
In light of the good relationship Ms. Froelich had developed with the staff at Marhofer and Plaintiff's interview score, one could understandably conclude that the Board desired only to maintain the quality of work currently being provided to Marhofer, and that it did not intend to discriminate against Plaintiff when it offered him the alternative assignment. As a result, this Court concludes that the trial court did not abuse its discretion by denying the motion for a new trial.
 C. Unwelcome Advance
Next, Plaintiff has maintained that the Board's response to his advance towards Ms. Froelich further demonstrated disparate treatment and racial discrimination. On the first day of his assignment at Marhofer, while training with Ms. Froelich, Plaintiff requested a date. Ms. Froelich testified that it made her uncomfortable, and without confronting Plaintiff, she informed her superiors. In response, the Board issued Plaintiff a written reprimand stating that his unwelcome advance constituted sexual harassment and that if it continued, he would be subject to disciplinary action. The reprimand, however, stated that it was issued in response to several incidents. Because this statement was untrue, Plaintiff has insinuated that the misstatement demonstrated the ill will that the Board harbored towards him.
However, as the Board has pointed out, the error was corrected at trial. Both Ms. Froelich and Mr. Blain admitted the mistake, and testified that Plaintiff made only one unwelcome advance. Ms. Froelich was not even aware that a warning was given. Such an oversight, the subsequent corrective admission and all the surrounding circumstances left room for the jury to believe that the Board was not discriminating against Plaintiff on the basis of race. As such, the trial court did not abuse its discretion.
 D. Job Performance Expectations
Plaintiff has also suggested that because of his race, his job requirements were different than Ms. Froelich's requirements. In furtherance of this theory, he testified that he was told that Ms. Froelich's attendance record and production figures constituted the standard to which he would have to perform in order to keep that position. He then presented evidence that his attendance records were "comparable" to Ms. Froelich's prior to his removal and that his teams consistently washed a higher number of cars than Ms. Froelich's crews. Plaintiff has, thus, insinuated that because he seemingly met the standard by which he was told he would be judged, his removal was based on his race. This position is misguided.
At trial, the Board presented a plethora of reasons why it removed Plaintiff. The Board introduced two letters sent to the Board from the Marhofer staff expressing concern over Plaintiff's absenteeism and job performance. As for his absenteeism, Ruth Pemberton, the Board's payroll supervisor, testified that Plaintiff was absent sixty-two percent more often than Ms. Froelich at the time of his removal. The record indicates that Plaintiff had used all of his "sick time" prior to his removal from Marhofer. It also indicates that he had been repeatedly warned and counseled regarding his attendance practically every year since beginning work with the Board right up until the time of his removal from Marhofer. In fact, Plaintiff was on the "short list" of employees, both minorities and non-minorities, who consistently had attendance problems and who would use up their leave time shortly after accruing it.
Plaintiff's job performance was likewise called into question at trial. The Board introduced evidence that Plaintiff would complete paperwork in front of a television and read the newspaper while his crew would wash cars. He would also, at times, leave the crew members totally unsupervised. Marhofer had even received complaints from customers. The Marhofer staff called the result of Plaintiff's supervision chaos.
Plaintiff has further claimed that the periodic evaluation he underwent was different in form than the one Ms. Froelich received. The evaluation Ms. Froelich received was a pre-printed evaluation form with pre-set criteria. Plaintiff, on the other hand, received a written, narrative evaluation without pre-set criteria. Despite these differences, it appears from the two forms that much of the same issues were addressed, and that, in substance, they are nothing more than two ways to evaluate employees. Plaintiff has not asserted that his written, narrative evaluation was somehow discriminatory. He has merely suggested that, because the two evaluations were different in form, he was discriminated against by the Board. This Court disagrees.
In this Court's estimation, the jury could have reasonably rejected Plaintiff's claims on disparate treatment at the hands of the Board because Marhofer had received numerous complaints regarding Plaintiff, he was absent more often than Ms. Froelich, and he was on a list of individuals who had recurring attendance problems. Moreover, Marhofer had sent letters to the Board which led the Board to believe Plaintiff's job performance was less than satisfactory. Based on this evidence, this Court cannot conclude that the trial court abused its discretion by denying Plaintiff's motion for a new trial.
 E. Other Job Sites
Plaintiff has also argued that the verdict was against the manifest weight of the evidence because of the Board's dealings with R.B. Stout. The record indicates that the Board also contracts with R.B. Stout and supplies it a crew and supervisor. The Board's superintendent, Dr. Norman Czubaj, testified that R.B. Stout requested the Board to allow a white-female to stay as supervisor. He further testified that R.B. Stout had threatened to terminate its contractual relationship if the Board failed to reassign this individual to R.B. Stout. Nevertheless, R.B. Stout was informed that the Board reserved the right to assign personnel, and that the reassignment request would be not be honored. Plaintiff has suggested that the Board's denial of R.B. Stout's request and Marhofer's successful request to remove him was indicative of racial bias. This argument is unpersuasive.
While it is clear that the Board would not honor the request of R.B. Stout to reassign an individual supervisor because it reserves the right to assign personnel, it is conceivable that when faced with losing a worksite because of unsatisfactorystaffing, the Board reconsidered this policy. Moreover, the record indicates that under the collective bargaining agreement, the Board, while not permitted to unilaterally transfer an employee to a vacancy, retained the power to remove individuals for poor performance. As such, a reasonable jury could have found that the Board's handling of R.B. Stout's request and its different response to Marhofer was based on the fact that one was a staffing assignment as opposed to a removal due to poor performance. In any event, the evidence does not present this Court with an excuse to overrule the decisions of the judge and jury.
Finally, this Court notes that the record indicates that no one at either the Board or Marhofer ever made any racial slur or remark to or about Plaintiff. He never complained to the Board that Marhofer had mistreated him in any way due to his race, or that he thought the Board was improperly removing him from Marhofer because of his race. In fact, prior to the filing of this action and in contrast to his previous paths of recourse, Plaintiff did not file a charge of racial discrimination with the Ohio Civil Rights Commission regarding his removal from Marhofer, nor did he file a grievance under the union contract based on racial discrimination.
In sum, Plaintiff's five separate arguments as to disparate treatment have failed to persuade this Court that the jury lost its way and created a manifest miscarriage of justice. Accordingly, the trial court did not abuse its discretion when it overruled Plaintiff's Civ.R. 59(A)(6) motion for a new trial. Plaintiff's first assignment of error is overruled.
ASSIGNMENT OF ERROR TWO
 It was error to deny [Plaintiff's] motion for a new trial because the verdict was not sustained by the weight of the evidence due to the [Board's] internal inconsistencies in the justification of its acts.
Plaintiff has asserted that the evidence adduced at trial can only be viewed as internally inconsistent and implausible. He has pointed to various portions of the record that he presumes to indicate that the Board's version of events were unbelievable. For example, Plaintiff has pointed to the Board's written reprimand of Plaintiff in regard to the unwelcome advance towards Ms. Froelich. The written reprimand stated that Plaintiff had repeatedly asked her for a date, when in fact he had only done so once. The Board, however, corrected the mistake at trial. Both Mr. Blain and Ms. Froelich testified that Plaintiff only made one advance and that it was directed at Ms. Froelich.
Plaintiff has also claimed that the Board set forth evidence that his work performance was inadequate, while all the written records of such demonstrate that it was comparable and even better than Ms. Froelich's performance. Such documentation included tables of the numbers of cars washed and Plaintiff's actual attendance records. The Board, however, introduced testimony from several witnesses that his performance was not satisfactory. As discussed above, the Board produced letters from Marhofer complaining of Plaintiff's job performance and evidence demonstrating that after analyzing Plaintiff's attendance records, he was in fact absent sixty-two percent more than Ms. Froelich. The Board also produced Plaintiff's probationary evaluations which indicated performance concerns.
Plaintiff has also claimed that the Board's reason for removing Plaintiff failed "the test of time" because upon her return to Marhofer, Ms. Froelich's attendance deteriorated. The record indicates that the Board failed to investigate Ms. Froelich's attendance record after she had replaced Plaintiff, and he has argued that such action amounts to an internal inconsistency in the Board's position on keeping records at the Marhofer site. On the contrary, such action, regardless of its truth, could be discounted because it would not have impacted the Board's decision at the time Plaintiff was placed on administrative leave.
While there are several possible interpretations of the evidence submitted in this case, this Court must construe it consistently with the lower court's judgment. Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226; see, also, Estate ofBarbieri v. Evans (1998), 127 Ohio App.3d 207, 211. When evaluating a manifest weight of the evidence argument, if the evidence is susceptible to more than one construction, "the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." Evans,127 Ohio App.3d at 211. In every trial, parties will inevitably introduce contradictory evidence. In such circumstances, an appellate court must be guided by a presumption of correctness. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80; Pawlus v. Bartrug
(1996), 109 Ohio App.3d 796, 799. This is because evaluating evidence and assessing credibility are primarily for the trier of fact. Seasons Coal Co., 10 Ohio St.3d at 80; Evans,127 Ohio App. 3d at 211, citing Hoitt v. Siefer (1995), 105 Ohio App.3d 104,107.
This Court concludes that, as to the various interpretations of the evidence available, the jury did not lose its way and did not create a manifest miscarriage of justice. The trial court did not abuse its discretion when it denied Plaintiff's motion for a new trial on the grounds of inconsistent evidence. Plaintiff's second assignment of error is overruled.
ASSIGNMENT OF ERROR THREE
 It was error to deny [Plaintiff's] motion for a new trial because the verdict was not sustained by the weight of the evidence due to the repeated impeachment of [the Board's] witnesses from their own deposition testimony.
For his third assignment of error, Plaintiff has argued that the repeated impeachment of Dr. Norman Czubaj, the superintendent at the Board, requires this Court to hold that the verdict was against the manifest weight of the evidence.[1] His argument is unpersuasive.
As noted above, this Court's review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact. Evans, 127 Ohio App.3d at 211; State v.Garrow (1995), 103 Ohio App.3d 368, 371. Absent extreme circumstances, an appellate court will not second guess a jury's determinations as to weight and credibility. Sykes ConstructionCo., Inc. v. Martell (Jan. 8, 1992), Summit App. Nos. 15034 and 15038, unreported, at 19. No such circumstances are present in this matter.
Plaintiff has argued that, at trial, Dr. Czubaj was impeached six times by prior testimony given in his deposition. Dr. Czubaj changed his answer to two certain questions, and twice was able to provide an answer at trial when he had testified that he was unable to recall during his deposition. Dr. Czubaj also testified at trial that he never made the following statement: "I could understand an allegation of race discrimination if I hired only Polish people." In his deposition, he stated he did not recall making it.
Nevertheless, Dr. Czubaj stated at trial that his answers had changed due to his review of documentation and preparation for trial. Such circumstances do not empower this Court to second guess the jury's determination on Dr. Czubaj's testimony. Clearly, the jury is in the best position to judge the credibility of a witness.
Moreover, this Court notes that after twelve witnesses testified, Plaintiff has claimed that the impeached testimony of one witness renders the jury's decision against the manifest weight, and in essence, that this Court should tout-de-suite leap to the conclusion that the jury lost its way as to the remaining testimony. On the contrary, where numerous witnesses testify and a party complains that the impeachment of a single witness is grounds for a new trial, this Court proceeds with great caution. Dr. Czubaj offered an explanation for the change in his testimony, and the record fails to disclose any extreme circumstances. This Court will not second guess a jury's determination as to weight and credibility in such an instance. The trial court did not abuse its discretion when it denied Plaintiff's motion for a new trial because Dr. Czuabaj was impeached. Plaintiff's third assignment of error is overruled.
ASSIGNMENT OF ERROR FOUR
 It was error to deny [Plaintiff's] motion for a new trial based upon the court's failure to instruct the jury on the proper determination of "pretext," and the [Board's] non-credible explanation, as had been requested.
Plaintiff has argued that the trial court committed error by its failure to include more explicit instructions regarding pretext after a determination was made as to the prima facie elements of discrimination. However, Plaintiff failed to specifically object to this portion of the instructions prior to the jury's retirement for deliberations. Civ.R. 51(A) provides, in pertinent part:
 On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.
Plaintiff has argued that the duty set forth in Civ.R. 51 is not applicable in this case, and he has asserted two reasons why he should not be bound by the duty it establishes. First, he has argued that his motion for a new trial on the grounds of erroneous jury instructions alleviated the requirement that he object prior to the jury's deliberations. This Court can uncover no precedent in the law, nor has any been presented to us which holds that the requirement set forth in Civ.R. 51 is obviated by a motion for new trial. As such, this Court declines Plaintiff's invitation to expand the province of a Civ.R. 59 motion for a new trial, and holds that the Civ.R. 51 requirement that a party object prior to the jury's retirement is not curtailed in any fashion if that party subsequently moves for a new trial.
Second, Plaintiff has argued that, under R.H. Macy Co. v.Otis Elevator Co. (1990), 51 Ohio St.3d 108, he was not required to specifically object prior to the jury's deliberations. In R.H.Macy Co., the Ohio Supreme Court noted that where the record demonstrates (1) that a trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) that the complaining party has unsuccessfully requested the inclusion of that law in the trial court's charge to the jury, that party has not waived his objection to the court's instructions by failing to formally object after the charge is given. Id., at 110; see, also, Presley v. Norwood (1973), 36 Ohio St.2d 29, paragraph one of the syllabus.
Prior to trial, Plaintiff had requested that the jury charge include an instruction on pretext and offered such in its proposed jury instructions. The trial court did not employ Plaintiff's exact language, but nevertheless included a section on racial pretext. On appeal, Plaintiff has complained that the trial court misstated the law, not that it failed to include it. In the end, he successfully requested an instruction on pretext. As a result, Plaintiff fell outside the rule in R.H. Macy Co. and remained bound by Civ.R. 51.
Generally, failure to comply with Civ.R. 51(A) results in a waiver of the alleged error on appeal. State v. Peagler (1996),76 Ohio St.3d 496, 499; Sindel v. Toledo Edison Co. (1993),87 Ohio App.3d 525, 530, citing Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, paragraph one of the syllabus. Under such circumstances, however, the plain error rule finds application.O'Brien v. Stern (Sept. 4, 1985), Summit App. 12001, unreported, at 4. The plain error rule is a judicially created exception to Civ.R. 51(A) which allows review of alleged errors not properly objected to in the trial court, where such errors are so fundamental and serious so as to affect "the basic fairness, integrity, or public reputation of the judicial process."Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285, 288.
Because Plaintiff failed to formally object prior to the jury's retirement, this Court will examine the charge to determine whether it was erroneous under the plain error rule. In that regard, the trial court stated:
 If you find that plaintiff proved by a preponderance of the evidence, the elements of a prima facie case of racial discrimination, your analysis is not finished. The burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the employment decision regarding plaintiff.
 Defendant has produced evidence of a nondiscriminatory reason for its action. You must thus determine by a preponderance of the evidence, whether the reason given by defendant was a legitimate one, or just a pretext for intentional racial discrimination. A pretextual reason is one that is not the real reason for the action.
 If you find that plaintiff has failed to prove all of the elements of his race discrimination claim by a preponderance of the evidence, then you must enter a verdict in favor of the defendant.
 If you find that plaintiff has proven all of the elements of his race discrimination claim by a preponderance of the evidence, and if you further find by a preponderance of the evidence that the defendant's articulated reason for removing plaintiff was a pretext for intentional race discrimination, then your verdict must be for plaintiff as it relates to his claim for racial discrimination.
Plaintiff has claimed that the trial court erred when it refused to use his precise language. This Court disagrees. Even when a requested instruction is a correct statement of the law, a trial court retains the discretion to use its own language to communicate a legal principle to a jury. Youssef v. Parr, Inc.
(1990), 69 Ohio App.3d 679, 690. As long as the court's instruction clearly states the law pertinent to the issues in the case, a court's use of that instruction will not constitute error.Atkinson v. Internatl. Technegroup, Inc. (1995), 106 Ohio App.3d 349,365.
In 1993, the United States Supreme Court addressed the burden of proof for a discrimination case. In St. Mary's Honor Ctr. v.Hicks (1993), 509 U.S. 502, 125 L.Ed.2d 407, the Court held that a plaintiff-employee has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If a prima facie case is presented, the employer must articulate some legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer can articulate a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted, and the plaintiff s burden is to prove that the employer's reason for discharge was false, and that discrimination was the real reason for discharge. Id.,509 U.S. at 506-507, 125 L.Ed.2d at 415-416. "Accordingly, because Ohio courts have seen fit to follow the federal model regarding proof of a prima facie case of discrimination, * * * it is now incumbent upon the employee to prove not only that the employer's reason for discharge was false, but that discrimination was the real reason."Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 263, citing St. Mary's, 509 U.S. at 510-511, 125 L.Ed.2d at 418-419.
In the instant case, the trial court touched each of these points in its instructions. The charge was sufficiently clear and stated the law pertinent to the issues before the jury. While the language is not what Plaintiff suggested, it is in sum and substance an accurate statement of Ohio's law on pretext. Therefore, this Court concludes that the trial court's jury instructions were not erroneous and that its statements regarding pretext do not constitute plain error. Plaintiff's fourth assignment of error is overruled.
 III.
Plaintiff's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BETH WHITMORE, FOR THE COURT
SLABY, P.J., BATCHELDER, J., CONCUR.
[1] Although Plaintiff refers to multiple witnesses in his assignment of error, in his argument in support of that assignment of error he only addresses the testimony of Dr. Czubaj. As such, this Court will discuss only Dr. Czubaj's testimony.