OPINION
Plaintiffs-appellants Doris Green, et al., appeal the March 14, 2000 Judgment Entry of the Muskingum County Court of Common Pleas, memorializing a jury's verdict in favor of defendants-appellees Larry D. Prouty, et al., as well as the trial court's February 24, 2000 Journal Entry, granting appellees' motion for summary judgment and denying appellants' motion for summary judgment.
 STATEMENT OF THE FACTS AND CASE
On January 5, 1993, appellee Larry Prouty was driving a semi-tractor trailer truck for his employer, appellee Longaberger Co., eastbound on St. Rt. 16 in Muskingum County, Ohio. As appellant Doris Green attempted to make a left hand turn onto St. Rt. 16 westbound from St. Rt. 60 northbound, appellees' truck and appellant's vehicle collided. Doris Green and her passenger, Mary Gravens, sustained serious injuries as a result of the collision.
On June 14, 1994, Green and her husband, Edward Green, filed a complaint in the Muskingum County Court of Common Pleas against appellees Prouty and Longaberger, alleging Prouty was negligent in his operation of the truck, and Longaberger, as his employer, was vicariously liable because Prouty was operating the truck within the course and scope of his employment. On December 29, 1994, appellants filed a Motion for Leave to File Amended Complaint, which the trial court granted via Journal Entry filed January 5, 1995. Appellants' first amended complaint added Freightliner Corp. and Pensky Truck Leasing as defendants. Appellants alleged Freightliner Corp. was strictly liable as the manufacturer of the defective brake assembly system installed in Prouty's truck, which was found to be defective and/or inoperable. Appellants voluntarily dismissed Pensky Truck Leasing on December 22, 1995.
Freightliner Corp. filed a Motion for Summary Judgment on August 7, 1996. Appellees Prouty and Longaberger filed a joint Motion for Summary Judgment on August 15, 1996. Appellants filed Cross-Motions for Summary Judgment on September 10, 1996. Thereafter, on September 23, 1996, appellees Prouty and Longaberger filed a Motion in Limine, seeking to exclude Mary Gravens' testimony regarding the speed of Prouty's truck. Via Judgment Entry filed September 26, 1996, the trial court granted appellees' motion in limine and granted summary judgment in favor of Freightliner Corp., and Prouty and Longaberger. Appellants filed a timely Notice of Appeal. This Court affirmed the trial court's granting of summary judgment in favor of Freightliner Corp., but reversed and remanded the trial court's decision relative to appellees. Green v.Prouty (June 13, 1997), Muskingum App. No. CT96-0050, unreported.
Upon remand, and prior to trial, appellees filed motions in limine, seeking to exclude testimony and evidence regarding the inoperability of the truck brakes, Prouty's driving record, and Prouty's employment history. In three separate Journal Entries filed February 9, 2000, and May 3, 1999, the trial court granted appellees' motions in limine. Appellees also filed a motion for partial summary judgment, which the trial court granted via Journal Entry filed February 24, 2000. In granting appellees' motion for summary judgment, the trial court made the following findings:
 1) In regards to whether as a matter of law the defendant Prouty was lawfully proceeding through the intersection the Court finds that the Court of Appeals has already determined that the defendant Prouty is entitled to the presumption that he had the right of way at the intersection. Therefore, the defendant is only entitled to the presumption that he was lawfully proceeding through the intersection.
 2) On the issue of the condition of the defendant's brakes the Court grants summary judgment for the same reasons as set forth in the Court's ruling on the defense motion in limine in regards to the brakes.
 3) On the issue of the defendant's request for summary judgment on the claim for negligent hiring, retention, and supervision, the Court grants summary judgment to the defendant.
 February 24, 2000 Judgment Entry.
The trial court also restated its decision to exclude testimony of Mary Gravens as to the speed of Prouty's truck. Trial commenced on February 28, 2000. After hearing all the evidence and deliberations, a six-two jury found in favor of appellees. The trial court memorialized the jury's verdict via Journal Entry filed March 14, 2000.
It is from this judgment entry appellants appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT DEFENDANT PROUTY WAS PRESUMED TO HAVE THE RIGHT OF WAY AND FURTHER ERRED BY REFUSING TO GIVE PLAINTIFFS' REQUESTED JURY CHARGE ON THE RIGHT OF WAY.
 II. THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF THE CONDITION OF THE DEFENDANT'S BRAKES; BY GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING THE INOPERABILITY OF THE BRAKES ON THE DEFENDANT'S TRUCK AND BY THEREAFTER PROHIBITING THE INTRODUCTION OF ANY SUCH EVIDENCE DURING THE TRIAL OF THIS MATTER; BY FAILING TO GIVE PLAINTIFF[S'] SUBMITTED JURY INSTRUCTIONS REGARDING DEFENDANT'S BRAKES AND O.R.C. 4513.20; AND BY INSTRUCTING THE JURY THAT DEFENDANT'S FAILURE TO STOP AFTER THE COLLISION COULD NOT BE CONSIDERED AS EVIDENCE OF DEFENDANT'S FAULT.
 III. THE TRIAL COURT ERRED BY FAILING TO GRANT SUMMARY JUDGMENT TO PLAINTIFF[S] BASED ON DEFENDANT'S INOPERABLE BRAKES AND O.R.C. 4513.20.
 IV. THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY, AS REQUESTED BY PLAINTIFF[S] ON THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS ("FMCSR") APPLICABLE TO TRUCKERS SUCH AS DEFENDANT PROUTY AND COMPOUNDED THIS ERROR, AND FURTHER ERRED, BY INSTEAD INSTRUCTING THE JURY THAT ANY EVIDENCE RELATING TO DEFENDANT PROUTY'S TRAINING AND FAILURE TO FOLLOW HIS TRAINING WHEN OPERATING HIS TRUCK COULD NOT BE CONSIDERED AS EVIDENCE OF NEGLIGENCE.
 V. THE TRIAL COURT ERRED BY PROHIBITING PLAINTIFF[S'] EXPERTS FROM TESTIFYING AS TO WHAT A PROPERLY TRAINED AND/OR REASONABLY ALERT AND/OR PRUDENT TRUCK DRIVER SHOULD HAVE PERCEIVED AND DONE UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE.
 VI. THE TRIAL COURT ERRED BY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENCE RETENTION AND SUPERVISION, AND FURTHER ERRED BY GRANTING DEFENDANTS' MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE OF PROUTY'S EMPLOYMENT HISTORY AND BY THEREAFTER PROHIBITING THE INTRODUCTION OF ANY SUCH EVIDENCE.
Appellees have filed a conditional cross-appeal, raising the following assignments of error:
 I. IN THE EVENT THIS MATTER IS REMANDED FOR FURTHER PROCEEDINGS, THE TRIAL COURT'S FAILURE TO PERMIT TROOPER COOPER TO TESTIFY AS TO THE CAUSE OF THE ACCIDENT, BASED UPON HIS INVESTIGATION, WAS ERROR.
 II. THE TRIAL COURT ERRED IN FAILING TO MAINTAIN A CONSISTENT POSITION ON THE BRAKE EVIDENCE.
 III. THE TRIAL COURT ERRED IN PERMITTING THE TESTIMONY OF DR. OLSON.
 IV. THE TRIAL COURT ERRED IN PERMITTING MR. HOLLAND TO TESTIFY WITHOUT EVIDENCE NECESSARY FOR A PROPER FOUNDATION.
 V. THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL BASED UPON THE CONDUCT OF APPELLANTS' COUNSEL THROUGHOUT TRIAL AND MORE PARTICULARLY IN CLOSING ARGUMENT.
 VI. THE TRIAL COURT ERRED IN FAILING TO PERMIT QUESTIONING OF MARY GRAVENS REGARDING THE LITIGATION SHE INSTITUTED AGAINST DORIS GREEN.
 APPEAL I
In their first assignment of error, appellants maintain the trial court erred in instructing the jury appellee Prouty was presumed to have the right of way, and further erred in refusing to give appellants' requested jury instruction on the right of way. Specifically, appellants assert the trial court's instruction was erroneous because evidence introduced at trial established appellee Prouty was not proceeding lawfully as he was speeding and/or driving too fast for conditions; driving inattentively and failing to keep a proper lookout; driving in the wrong lane of travel; driving contrary to his training and in violation of federal regulation; and driving a truck with inoperable and/or defective brakes. Appellants explain appellee Prouty, therefore, was not entitled to the presumption and such determination was an issue for the jury.
Our discussion of appellants' assignment of error as it relates to appellee Prouty's driving a truck with inoperable and/or defective brakes shall be discussed in appellants' second assignment of error, infra.
A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. Marshall v. Gibson (1985), 19 Ohio St.2d 10, 12. It is well established a trial court should confine its instructions to the issues raised by the pleadings and the evidence. Becker v. Lake Cty.Mem. Hosp. West (1990), 53 Ohio St.3d 202, 208.
In Ohio, it is well established the trial court will not instruct the jury where there is no evidence to support an issue. Riley v. Cincinnati
(1976), 46 Ohio St.2d 287. However, requested instructions should ordinarily be given if they are correct statements of law applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. Nonetheless, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law. The court retains discretion to use its own language to communicate the same legal principles. Youssef v. Parr, Inc. (1990),69 Ohio App.3d 679, 690.
A challenge to a single jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. State v. Hardy (1971), 28 Ohio St.2d 89; State v. Price (1979),60 Ohio St.2d 136. Accordingly, the proper standard of review for an appellate court is whether the trial court's refusal to give a party's requested instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64
. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In the instant action, the trial court instructed the jury as follows:
 "Right of way" means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which he or she is moving in preference to another vehicle approaching from a different direction into its path.
 The Defendant Larry Prouty was presumed to have the right of way. This presumption can be rebutted.
 The word "approaching" means that a vehicle is so close in distance and time that a collision will occur if the driver who does not have the right of way does not stop or reduce * * * his or her speed and yield the right of way to the preferred party.
 To keep his right of way as a preferred party to continue to travel uninterruptedly, the driver must operate his vehicle in a lawful manner. If he does not do so, he loses the right of way and his status as the preferred party.
 If a preferred party loses the right of way by not proceeding in a lawful manner, each party then must use ordinary care under the circumstances.
 The driver of a vehicle who has the right of way has the right to travel uninterruptedly in a lawful manner. He has the right to rely upon his preferred status and to assume, in the absence of notice to the contrary, that others will obey the law.
 The driver of a vehicle who does not have the right of way must permit the other party to proceed without interruption. He or she must not move through the intersection or that part of the intersection about to be occupied by the preferred party, if such movement would interfere with the progress of the preferred party. The party who does not have the right of way must look at such times and places in a manner that will make his or her looking effective, and he or she must wait and travel at a speed slow enough to stop and avoid entering into the path of the approaching vehicle having the right of way. Failure to yield the right of way to a preferred party is negligence.
 If you find that the Defendant was not traveling in a lawful manner, then he did not have or lost the right of way and was not entitled to any preference over the other driver. In that event, such party was not required to yield the right of way, and the parties have equal rights and each must use ordinary care under the circumstances.
 If you find that the Defendant was traveling in a lawful manner and did not lose his right of way then the plaintiff was required to yield the right of way to him.
 The driver of a vehicle approaching a stop sign must stop at a clearly marked stop line before entering the intersection. A failure to do so — a failure to so stop is negligence.
 After stopping, the driver must yield the right of way to any vehicle in the intersection or approaching in another roadway so close as to create an immediate hazard during the time the driver is moving across or within the intersection. After stopping, failure to so yield the right of way is negligence.
 A driver of a vehicle intending to turn left within an intersection must yield the right of way to any vehicle approaching so close to the intersection as to create an immediate hazard.
 An immediate hazard is present when an approaching vehicle is so close in distance and time that a collision will occur or a dangerous situation will be created if the driver who does not have the right of way fails to yield that right of way.
 A driver must operate his or her motor vehicle at a reasonable or proper speed, neither too fast nor too slow, having due regard to the traffic, surface and width of the street or highway and to any other conditions.
 The speed limit for this second [sic] of highway is 55 miles per hour.
 Speed in excess of 55 miles per hour on this section of the highway, standing alone, is considered unreasonable. A greater or lesser speed per hour may be reasonable or proper depending upon all the circumstances. Evidence of a greater speed standing alone proves the fact of unreasonable speed and is conclusive of that fact unless it is balanced or outweighed and explained by other evidence of equal or greater weight.
 In determining whether the speed of the driver was reasonable or proper, you must consider the permanent physical features of the scene, the hour of day or night, the extent of other traffic, the width and nature of the roadway and any other circumstances existing at that time at the scene. A rate of speed greater than that fixed in the statute may, under certain circumstances, be reasonable or proper, and a rate of speed less than that fixed by statute may, under certain circumstances, be unreasonable and improper whether the rate of speed of a vehicle * * * whether the rate of speed of a vehicle, whatever you find it to have been, was reasonable and proper in view of all the surrounding conditions is for you, the jury, to determine. No particular rate of speed is a conclusive violation of the statute.
 A driver must not operate a vehicle at a greater speed than will permit him or her to bring it to a stop within the assured clear distance ahead. The assured clear distance ahead is the distance between the vehicle he or she is operating and a reasonably observable object in his path of travel. It constantly changes and is measured at any moment by the distance between the driver and any reasonably observable object ahead of him or her in his or her path of travel.
 A discernible object is a reasonably visible object. An object is discernible when it is visible or can be detected or perceived.
 If the vehicle ahead in the same lane of travel stops suddenly, this does not excuse the driver approaching that vehicle from maintaining an assured clear distance sufficient to stop and avoid hitting the vehicle ahead.
 If you find that a driver's assured clear distance ahead was suddenly reduced by the entrance of a vehicle into his or her path or lane of travel and within such assured clear distance ahead, then the assured clear distance law does not apply.
 If you find that the assured clear distance law applies and was violated, then you must find the driver was negligent.
Tr. at 1303-1308.
The aforementioned charge states the applicable rule of law and communicates the same legal principals set forth in appellants' proposed jury instructions.[1] Accordingly, we find the trial court did not abuse its discretion in not giving appellants' requested charge to the jury.
Appellants' first assignment of error is overruled.
 II
In their second assignment of error, appellants challenge the trial court's rulings relative to the issue of the condition of the truck brakes. First, appellants submit the trial court erred in granting appellees' motion for summary judgment on the issue. Next, appellants contend the trial court erred in granting appellees' motion in limine, excluding testimony and evidence relative to the condition of the brakes at trial. Further, appellants assert the trial court erred in failing to give appellants' submitted jury instructions relative to the brakes and R.C. 4513.20. Finally, appellants argue the trial court erred in instructing the jury appellee Prouty's failure to stop after the accident could not be considered evidence of fault. We shall address each in turn.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ. R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
As stated supra, the trial court granted summary judgment in favor of appellees on the issue of the condition of the brakes "for the same reasons as set forth in the Court's ruling on the defense motion in limine in regards to the brakes." February 24, 2000 Journal Entry. In its February 9, 2000 Journal Entry, granting appellees' motion in limine, the trial court ruled:
 This matter comes before the Court on the defendant's motion in limine to exclude testimony regarding the inoperability of the brakes upon the defendant's truck. This case has been before the Fifth District Court of Appeals on the issue of the defective brakes on the defendant's truck. That Court upheld the summary judgment granted to Freightliner finding that the defective brakes were not the proximate cause of the accident.
February 9, 2000 Journal Entry.
Because this Court previously ruled the defective brakes were not a proximate cause of the accident, we find summary judgment in favor of appellees was appropriate on this issue.[2]
Next, appellants challenge the trial court's granting appellees' motion in limine, excluding testimony relative to the condition of the brakes. An order granting or denying a motion in limine is a tentative, interlocutory, precautionary ruling about an evidentiary issue that is anticipated. State v. French (1995), 72 Ohio St.3d 446, 450. An appellate court need not review the propriety of such an order unless the claimed error is preserved by timely objection on issues actually reached during the trial. See: State v. Amburgey (1993), 86 Ohio App.3d 635;State v. Leslie (1984), 14 Ohio App.3d 343; State v. Brown (1988),38 Ohio St.3d 305.
Appellants claim the trial court reiterated its decision to exclude any testimony regarding the condition of the brakes during an in-chambers discussion with counsel, prior to the commencement of trial. However, appellants failed to advise this Court where, on the record, they proffered the desired testimony. As such, we find appellants failed to preserve this error for our review. Assuming, arguendo, appellants properly preserved the alleged error, we find the trial court did not err in excluding the testimony because the brakes, whether defective or inoperable, were not a proximate cause of the accident as a matter of law. See, Green I. Therefore, such evidence was irrelevant for determining the issue of appellee Prouty's negligence and the trial court did not abuse its discretion in sustaining appellees' motion in limine regarding evidence of the defective brakes.
We now turn to appellants' assertion the trial court erred in failing to instruct the jury in accordance with appellants' submitted instructions relative to the brakes and R.C. 4513.20. Appellants maintain because appellee Prouty was operating the truck with defective brakes; therefore, violating R.C. 4513.20, appellee Prouty was proceeding unlawfully and the jury should have been instructed to determine whether Prouty lost his right of way. Even if the jury found appellee Prouty negligent because he was operating the truck with defective and/or inoperable brakes, a finding of negligence is not equivalent to a finding of liability. Hitchens v. Hahn (1985), 17 Ohio St.3d 2121, 214. Appellants were still required to establish such negligence was a proximate cause of their damages. Reed v. Weaver (June 26, 1995), Stark App. No. 1994CA00375, unreported. Because this Court previously determined the brakes were not a proximate cause of the accident, a finding of negligence therefrom does not rebut the presumption appellee had the right of way.
Finally, we address appellants' assertion the trial court erred in instructing the jury appellee Prouty's failure to stop after the collision could not be considered as evidence of his negligence. The trial court instructed the jury as follows:
 You may consider this evidence [evidence of appellee Prouty's training and road test] along with all the other facts and circumstances in this case in deciding whether ordinary care was used by Larry Prouty.
 You have heard Mr. Prouty did not stop immediately after this accident, but did return to the scene thereafter. The fact that Mr. Prouty left the scene should not be considered by you as evidence of fault. The Court has made rulings on certain matters, and you are not to speculate as to those rulings. However, the evidence that you heard can be considered by you, along with all other evidence.
Tr. at 1300.
Although the trial court would not permit the jury to consider appellee Prouty's failure to stop as evidence of fault or negligence, the trial court allowed the jury to use such evidence in determining the issue of ordinary care.[3] We find such instruction was not an abuse of discretion.
Appellants' second assignment of error is overruled.
 III
In their third assignment of error, appellants contend the trial court erred in failing to grant summary judgment in their favor based upon the inoperable brakes and R.C. 4513.20. Appellants explain because this Court previously decided the issue of appellee Prouty's negligence in Green I, such determination became law of the case and the trial court should have granted appellants' motion for summary judgment on the issue of negligence.
As discussed supra, a finding of negligence is not equivalent to a finding of liability. This Court previously determined the brakes were not the proximate cause of the accident; therefore, appellants could not establish appellee Prouty's liability. Accordingly, we find the trial court did not err in denying appellants' motion for summary judgment.
Appellants' third assignment of error is overruled.
 IV
In their fourth assignment of error, appellants claim the trial court erred in refusing to instruct the jury on the Federal Motor Carrier Safety Regulations applicable to semi-tractor trailer drivers such as appellee Prouty, and further erred in instructing the jury evidence relative to appellee Prouty's training and failure to follow such training could not be considered evidence of his negligence.
Relative to this assignment of error, the trial court instructed the jury as follows:
 Evidence of the training and road test given to Larry Prouty was presented. Said evidence is not a test of negligence. You may consider this evidence with all the other facts and circumstances in this case in deciding whether ordinary care was used by Larry Prouty.
* * *
 What is negligence? Negligence is a failure to use ordinary care. Each person is required to use ordinary care to avoid injuring another person or another's property.
 Ordinary care is the care that a reasonably cautious person would use under the same or similar circumstances.
Tr. at 1299-1301.
Although the trial court did not instruct the jury appellee Prouty's failure to act in accordance with his training was negligence per se, the trial court instructed the jury it could consider the evidence in determining the ultimate issue of whether appellee Prouty used ordinary care. We find such instruction was not an abuse of discretion.
Further, we have reviewed appellants' proposed jury instructions on the federal regulations in light of the entire charge, and find the trial court communicated the same legal principles proposed by appellants in the charge.[4] Accordingly, we find the trial court did not abuse its discretion in not charging the jury exactly as proposed by appellants.
Appellants' fourth assignment of error is overruled.
 V
In their fifth assignment of error, appellants argue the trial court erred in prohibiting their experts from testifying as to what a properly trained and/or reasonably alert and/or prudent truck driver should have perceived and done under the facts of the case sub judice.
Rulings relative to the admissibility of expert testimony are within the discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. King v. Grant Motor ExpressCo. (1980), 70 Ohio App.2d 190, 192-193.
In the instant action, the trial court ruled appellants' and appellees' experts could not express opinions as to the issue of whether appellee Prouty was operating his truck through the intersection in an unsafe or negligent manner. During appellants' direct examination of Robert Reed, one of their experts, the trial court, outside the presence of the jury, informed the parties' counsel:
 * * * If he [Robert Reed] is to testify, as indicated in his report, that Mr. Prouty was proceeding in an unsafe manner, I will sustain the objection to that. That is the ultimate issue for this jury to decide, whether or not Mr. Prouty was proceeding in an unsafe manner, and I will not let the expert express an opinion on that. In regards to what is proper training and whether or not you are following that training, I will allow those type of questions, but not as to the ultimate issue of this case.
* * *
 An expert is necessary for a jury in a doctor's case because the determination is beyond the common experience of the jury. When the ultimate issue is within the common experience of the jury, an expert cannot express an opinion as to the ultimate issue in the case. You can only use the expert to provide information. It's up to the jury to provide the ultimate determination.
* * *
 Negligence while operating a truck, the Court will rule, is within the common experience of the jury and they can — they can find their way without getting lost and do not need the experts to tell them whether or not somebody is operating a truck or motor vehicle negligently or unsafely.
Tr. at 257-259.
The following morning, during the direct examination of Jack Holland, a traffic accident consultant, Attorney Traci, counsel for appellants, asked the witness to render an opinion on whether or not appellee Prouty acted reasonably upon his approach to the intersection. Tr. at 336. The trial court sustained appellees' objection and conferred at the bench with trial counsel, outside the hearing of the jury. After allowing counsel to speak, the trial court stated:
 The Court, first of all, has ruled that the experts will not be giving opinions as to the ultimate issue in this case. Whether or not somebody acted reasonably, prudently, or otherwise is for the trier of the facts to determine. The experts are here to give them the facts and information on which to base their decision. The Court has made that clear in more than one ruling.
 Both counsel have continued to ask those questions. The Court has sustained objections by the Plaintiff and objections by the defense to those type of questions. The Court is indicating to both counsel, he does not want to hear any more questions containing that information. The Court has made its ruling. The Court of Appeals or somebody else will ultimately decide if that's correct or wrong.
 The Court's reading of the law in regard to experts is that it's within the discretion of the Court as to whether or not they give an expert opinion as to the ultimate issue in this case. The Court finds that that is not necessary in this case and they will not be giving an expert opinion as to [the] ultimate issue as to whether or not either one of the drivers [was] acting reasonably, prudently, responsibly, whatever word you want to put, and the Court will not tolerate any more questions of any witness to that effect.
Tr. at 341-343.
Appellants' direct examination of Robert Reed proceeded as follows:
BY MR. MARX:
 Q. Mr. Reed, do you have an opinion in this case, based on training principles, as to whether or not, as Mr. Prouty approached this intersection, he was operating his motor vehicle the way truck drivers are trained to do so?
MR. LEE: Objection.
THE COURT: Noted. Overruled.
 A. According to industry standards of training and that of any experienced driver, I don't think he was operating it properly.
Q. What do you base that opinion on, Mr. Reed?
MR. LEE: Objection.
 A. By not slowing down at the approach of an intersection; by not traveling a little bit slower than the speed limit when the roads were wet. Also, there's a thing of communicating your presence. He should have had the lights on and possibly even, if there's cars coming across there, using his horn. Hitting his brakes, gearing down, moving to the right out of people's way or move off the traveled portion of the highway to avoid the crash, because there [were] no gullies or no — no objects for him to hit.
 Q. Now, Mr. Reed, are you familiar with Mr. Prouty having testified in his deposition that there was a white Bronco type vehicle that went across the intersection prior to when he collided with Doris Green's vehicle?
A. I think that was known as the Darr vehicle.
Q. Yes, sir.
A. Okay. Yes, I know that.
 Q. And, again, do you have an opinion, based on your experience and so forth, as to what a properly trained driver would be expected to do when a vehicle such as described by Mr. Prouty, the Darr vehicle, comes across this intersection?
MR. LEE: Objection.
A. Let off the accelerator —
THE COURT: Sustain that — overruled, I'm sorry.
You may proceed with the answer.
BY MR. MARX:
Q. First of all, do you have an opinion?
A. Yes.
Q. And would you tell us what that is, please?
 A. Let off the accelerator, lightly tap the brake to bring yourself down in speed from 55 miles an hour, if that's what you were traveling, down to 45, you know, 50. You know, decrease five to ten miles an hour.
Q. And, again, tell us what you base that on?
 A. I base that on the training principles that are in place now and have been, and also reasonable and responsible driving of a tractor-trailer operator.
 Q. Now, do you have an opinion, Mr. Reed, as to — again, based on your review or knowledge, as to whether Mr. Prouty was acting in accordance with the way truck drivers are trained with respect to whether or not he was keeping a proper lookout as he approached this intersection?
MR. LEE: Objection.
 THE COURT: I am going to sustain that one in regard to the foundation.
MR. MARX: May I rephrase it, Your Honor?
THE COURT: Yes.
MR. MARX: Thank you.
BY MR. MARX:
 Q. Mr. Reed, do you have an opinion, based on training principles, again, as well as your experience, obviously, as to whether or not Mr. Prouty was utilizing the type of visual search methods that truck drivers are trained to use as he approached this intersection?
MR. LEE: Again, objection.
THE COURT: Grounds?
 MR. LEE: I don't think he has a basis on — in training as to searching. I mean, there's an expert coming in on perception
 THE COURT: I believe he has testified that that is part of the training and I will allow the question.
You may answer.
 A. I mean, not — not being there and not looking at perception, the training principles — and from reading the depositions, once the Darr vehicle went across, it should have been no more bother to Mr. Prouty, but it seemed like he focused on it. And in the training principles, it tells us, as tractor-trailer drivers, we are more worried about the car on the right coming out.
Why?
 The car on the left already passed through our lane and is gone, but the car from the right — you've got to always be looking to the right because that's where it can come — approach you quicker than even a car coming across from the left the other way.
* * *
Tr. at 262-266.
Attorney Traci elicited the following testimony during his examination of Jack Holland:
 Q. Mr. Holland, based on your review of the police report, of the testimony, the deposition testimony of Trooper Hollins, the deposition testimony of Mr. Prouty, your scene investigation, your measurements, your years as a state trooper, your years in establishing and setting up the reconstruction program for the entire State Patrol of Ohio, and any other experience you have as a truck driver, did you find any evidence, based on all of that training, knowledge, and experience and evidence you had available to you, whether there was any — any physical evidence at the scene of this accident that Mr. Prouty in fact swerved his vehicle prior to the impact?
* * *
 A. I saw none in the photographs, and again, the officer said no tire marks. So, in the absence of marks that would indicate a swerve, and my examination of the photographs which show none, I see no evidence of Mr. Prouty having served [sic] or braked prior to the impact.
* * *
 Q. Did you find any evidence, base on all of your qualifications, again, that I said earlier, and the same set of evidence, that is, Mr. Prouty's sworn deposition testimony, the police report, your own investigation and knowledge, whether or not there — there is any evidence that Mr. Prouty tried to or did hit the brakes prior to this impact?
* * *
 A. No. Again, I see no — no record of — or photographic record of any evasive action taken by Mr. Prouty either in the form of steering or braking.
 Q. Did you find any evidence in the — in the deposition testimony of Mr. Prouty that you used in your reconstruction where Mr. Prouty ever so much as took his foot off the accelerator —
A. No.
* * *
 Q. [The shortest possible time for Mrs. Green to be exposed to Mr. Prouty] giving all the benefit of the doubt to Mr. Prouty, how many feet away was he when she pulled out?
A. 532 feet when she started to move.
 Q. Okay. Now, let's assume, as Mr. Lee was suggesting, that we gave Mr. Prouty even more time to have Mrs. Green in front of him to see her. Does that also give him more time to take his foot off the accelerator?
 A. It does. It gives him — it gives him time to slow down, maintain control during the deceleration, without very hard braking or very — moderate braking.
 Q. More time to brake, more time to swerve, more time to blow a horn. Would he have more time to do all those things?
A. Yes, sir.
 Q. Is that what you mean by your reconstruction was to his advantage?
A. Yes, sir.
 Q. Did you assume any fact in your reconstruction that was inconsistent with the testimony of Mr. Prouty that you that you thought was the truth when you read it?
 A. No. Again, I took his — his estimate of speed at face value and applied reasonable values to what he described as the movement of Mrs. Green, and the fact that the car was stopped.
* * *
 Q. Mr. Holland, the time frame that is here of Mrs. Green, two seconds to the stop bar, 4.6 second from the stop bar to stopping in the road where Mr. Prouty saw her, and the two seconds of turning, do you — did you rely on the testimony of Darr in order to come up with those in your reconstruction?
 A. No. That's — again, that's based on average values for standardized formulas, accepted values for accepted formulas and it was based on the testimony of Ms. Cale [an eyewitness] and Mr. Prouty.
* * *
 Q. In your reconstruction, based on reconstruction principles, if you added all this time to the time frame involved that you gave us of 6.6 seconds, what does that do to any conclusions of your reconstruction?
 A. It either puts Mr. Prouty further away or the distance remains the same and he's going faster than I had calculated, yes, sir.
* * *
Q. The accident still happened; correct?
A. It did.
 Q. Okay. So, if there's more time for the accident to happen, he was either further back or he covered the distance in a short — in a quicker time; is that right?
 A. That's true, because the time is — the time is fixed. Yes, sir.
Q. So —
 A. If you increase the distance, you increase the distance. If you hold the distance steady over that time, then you increase the speed.
Q. Then increase the speed.
* * *
Tr. at 328-330, 349-350, 361-363.
The trial court reviewed Dr. Paul Olson's videotape deposition and issued its ruling thereon with counsel in-chambers, off the record. Tr. at 796. We are, therefore, unable to determine whether the trial court abused its discretion in admitting or excluding various aspects of Olson's testimony. Based upon our review of Reed and Holland's testimony, we find appellants were able to present evidence from which the jury could resolve the issue of whether appellee Prouty operated his vehicle in accordance with his training and/or as a reasonable truck driver would have under the circumstances. Although this Court does not necessarily agree with the trial court's determination the ultimate issue was within the common experience of the jury[5] and; therefore, did not require an expert opinion, we, nevertheless, find the trial court's ruling was not an abuse of discretion nor did it have a prejudicial impact on appellants in light of the testimony the trial court did allow noted supra.
Appellants' fifth assignment of error is overruled.
 VI
In their final assignment of error, appellants assert error in the trial court's granting appellees' motion for summary judgment on the claims of negligent retention and supervision, as well as the trial court's excluding evidence of appellee Prouty's employment history.
In order to establish a claim for negligent retention, a party must prove:
 (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.
Evans v. Ohio State Univ. (1996), 112 Ohio App.3d 724, 739.
The issue of whether a duty is owed is based upon the foreseeability of the injury — whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. Id. at 740. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.Menifee v. Ohio Welding Products (1984), 15 Ohio St.3d 75, 77.
In support of their position, appellants refer to the deposition of Gary Reynolds, appellee Prouty's supervisor, who testified appellee Prouty had numerous problems throughout his employment with appellee Longaberger. According to Reynolds, appellee Prouty had problems controlling his temper and anger, as well as problems with losing his patience while at work. Upon review of the record, we find appellee Prouty's past history of failure to cooperate with co-workers, difficulty following instructions, and failure to control his temper would not cause appellee Longaberger to foresee the injury to appellant Doris Green, which arose out of appellee Prouty's operation of a semi tractor-trailer. Because this evidence does not tend to establish any fact relevant to the issues of foreseeability of injury or proximate cause relating to negligent retention, we find the trial court properly granted summary judgment on the claim and did not abuse its discretion in excluding such evidence at trial.
Appellants' sixth assignment of error is overruled.
 CROSS-APPEAL
In light of our resolution of appellants' assignments of error, we need not address appellees' conditional cross-appeal.
The judgment of the Muskingum County Court of Common Pleas is affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed. Costs assessed to appellants.
 __________________________ By: Hoffman, P.J.
Wise, J. and Boggins, J. concur
[1] Appellants' proposed jury instructions read as follows:
Plaintiff's Proposed Jury Instructions Number 12
* * *
 DEFINED. "RIGHT OF WAY" means the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which he or she is moving in preference to another vehicle approaching from a different direction into its path.
* * *
 2. APPROACHING. The word approaching means that a vehicle is so close in distance and time that a collision will occur if the driver who does not have the right of way does not stop or reduce his speed and yield the right of way to the preferred party.
 3. IN A LAWFUL MANNER. To keep his right of way as a preferred party to continue travel uninterruptedly, the driver must operate his vehicle in a lawful manner. If he does not do so, he loses the right of way and his status as the preferred party.
 4. LOSS OF RIGHT OF WAY. If a preferred party loses the right of way by not proceeding in a lawful manner, each party then must use ordinary care under the circumstances.
Plaintiff's Proposed Jury Instruction Number 13
* * *
 6. RIGHTS OF A PREFERRED PARTY. The driver of a vehicle who has the right of way has the right to travel uninterruptedly in a lawful manner. He has the right to rely upon his preferred status and to assume, in the absence of notice to the contrary, that others will obey the law.
 7. DUTY OF PARTY NOT PREFERRED. The driver of a vehicle who does not have the right of way must permit the other party to proceed without interruption. He must not he preferred party. The move through the intersection or that part Of the intersection about to be occupied by the preferred party, if such movement would interfere with the progress of the preferred party. The party who does not have the right of way must look at such times and places in a manner that will party who does not have the right of way must look at such make his looking effective, and he must wait and travel at a speed slow enough to stop and avoid entering into the path of the approaching vehicle having the right of way. Failure to yield the right of way to a preferred party is negligence.
 8. CONCLUSION ON LAWFUL MANNER. If you find that the plaintiff or defendant was not traveling in a lawful manner, then he or she did not have or lost the right of way and was not entitled to any preference over the other driver. In that event such party was not required to yield the right of way, and the parties have equal rights and each must use ordinary care under the circumstances. If you find that the plaintiff was traveling in a lawful manner, then she had the right of way and the defendant was required to yield the right of way to her.
 If, however, you find that the Defendant was traveling in a lawful manner and did not lose his right of way then the Plaintiff was required to yield the right of way to him.
Plaintiff's Proposed Jury Instruction Number 14
* * *
 1. STOPPING AT STOP SIGNS. A driver of a vehicle approaching a stop sign must stop at a clearly marked stop line before entering the intersection. A failure to so stop is negligence. After stopping, the driver must yield the right of way to any vehicle in the intersection or approaching in another roadway so close as to create an immediate hazard during the time the driver is moving across or within the intersection. After stopping, failure to so yield the right of way is negligence.
Plaintiff's Proposed Jury Instruction Number 15
* * *
 1. TURNING LEFT. A driver of a vehicle intending to turn left within an intersection must yield the right of way to any vehicle approaching so close to the intersection as to create an immediate hazard.
* * *
 3. IMMEDIATE HAZARD. Immediate hazard is present when an approaching vehicle is so close in distance and time that a collision will occur or a dangerous situation will be created if the driver who does not have the right of way fails to yield that right of way.
Plaintiff's Proposed Jury Instruction Number 16
* * *
 1. REASONABLE OR PROPER SPEED. A driver must operate his motor vehicle at a reasonable or proper speed, neither too fast nor too slow, having due regard to the traffic, surface and width of the street or highway and to any other conditions.
* * *
 2. UNREASONABLENESS. Speed in excess of 55 miles per hour on this section of the highway, standing alone, is considered unreasonable. A greater or lesser speed per hour may be reasonable or proper depending upon all the circumstances. Evidence of a greater speed standing alone proves the fact of unreasonable speed and is conclusive of that fact unless it is balanced or outweighed and explained by other evidence of equal or greater weight. * * *
 3. CONSIDERATIONS. In determining whether the speed of the driver was reasonable or proper you must consider the Permanent physical features of the scene, the hour of day or night, the extent of other traffic, the width and nature of the roadway and any other circumstances existing at that time at the scene. A rate of speed greater than that fixed it, the statute may under certain circumstances be reasonable or proper, and a rate of speed less than that fixed by statute may under certain circumstances be unreasonable and improper. Whether the rate of speed of defendant's vehicle, whatever you find it to have been, was reasonable and proper in view of all the surrounding conditions is for you, the jury, to determine. No particular rate of speed is a conclusive violation of the statute.
 4. OBSTRUCTED VISION. If a driver's vision is completely obscured, it is his duty in the exercise of ordinary care to slow down or stop, if necessary, until his vision is at least in part restored.
 5. ASSURED CLEAR DISTANCE. A driver must not operate a vehicle at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead. The assured clear distance ahead is the distance between the vehicle he is operating and a reasonably observable object in his path of travel. It constantly changes and is measured at any moment by the distance between the driver and any reasonably observable object ahead of him in his path of travel.
 6. DISCERNIBLE OBJECT. A discernible object is a reasonably visible object. An object is discernible when it is visible or can be detected or perceived.
 8. SUDDEN STOP. If the vehicle ahead in the same lane of travel stops suddenly, this does not excuse the driver approaching that vehicle from maintaining an assured clear distance sufficient to stop and avoid hitting the vehicle ahead.
 9. SUDDEN ENTRANCE. I you find that a driver's assured clear distance ahead was suddenly reduced by the entrance of the Plaintiff into his path or lane of travel and within such assured clear distance ahead, then the assured clear distance law does not apply.
 10. NEGLIGENCE. e assured clear distance rule applies and was violated, then you must find the driver was negligent.
[2] In Green I, this Court found the defective brakes were not a proximate cause of the accident as "the only fact in evidence regarding the brakes is that appellee Prouty did not hit them prior to impact."Green I, supra, at 6.
[3] Appellee Prouty's inability to stop immediately after the accident was attributable to the inoperability to the truck's brakes.
[4] Appellants' proposed instructions read as follows:
Plaintiff's Additional Jury Instruction Number 1
 Duty To Comply With Federal Motor Carrier Safety Regulations
 Operators of semi trucks, such as the defendant Larry Prouty, are required by federal law to familiarize themselves with The Federal Motor Carrier Safety Regulations and to comply with The Federal Motor Carrier Safety Regulations and its provisions.
Plaintiff's Additional Jury Instruction Number 2
Required Knowledge And Skills — General Requirement
 All drivers of commercial motor vehicles shall have knowledge and skiffs necessary to operate a commercial motor vehicle safely as contained in The Federal Motor Carrier Safety Regulations.
* * *
Plaintiff's Additional Jury Instruction Number 3
Required Knowledge
 All commercial motor vehicle Operators must have knowledge of the following general areas:
 1. Commercial motor vehicle safety control systems. Proper use of the motor vehicle's safety system, including lights, horns and brakes and the correct procedures for using these safety systems.
 2. Visual search. The importance of proper visual search, and proper visual search methods, including seeing ahead and to the sides.
 3. Communication. The principals and procedures for proper communications and the hazards of failure to communicate properly, including using the horn or lights to signal presence.
 4. Speed management. The importance of understanding the effects of speed, including: speed and stopping distance; speed and surface conditions; and speed and traffic flow.
 5. Space management. The procedures and techniques for controlling the space around the vehicle, including the importance of space management and controlling the space ahead of the vehicle.
* * *
Plaintiff's Additional Jury Instruction Number 4
Required Skills
 All commercial vehicle operators must possess and demonstrate basic motor vehicle which control skills and safe driving skills for each vehicle group h the driver operates or expects to operate. These skills shall include:
 1. the ability to stop and move the vehicle forward in a safe manner;
2. the ability to use proper visual search methods;
 3. the ability to adjust speed to the configuration and condition of the roadway, weather and visibility conditions, and traffic conditions;
 4. the ability to adjust operation of the motor vehicle to prevailing weather conditions including speed selection, braking, direction changes and following distance to maintain control.
 5. the ability to observe the road and the behavior of other motor vehicles.
* * *
Plaintiff's Supplemental Jury Instruction Number 1
ROAD TEST
 A person shall not drive a commercial motor vehicle unless he has first successfully completed a road test and has been issued a Certificate of Driver's Road Test.
 The road test shall be given by the motor carrier or a person designated by it. The road test must be of sufficient duration to enable the person who gives it to evaluate the skill of the person who takes it at handling tile motor vehicle, and associated equipment, that the motor carrier intends to assign him.
 The motor carrier shall provide a road test form on which the person who gives the test shall rate the performance of the person who takes it at each operation or activity which is a part of the test. After he completes the form, the person who gave the test shall sign it. Such test shall be maintained by the motor carrier as part of the driver qualification file.
* * *
[5] We do not believe the care needed to safely operate a semi tractor-trailer is within the common experience of the jury.